## JUMONVILLE PIPE & MACHINERY CO., Inc., v. HASLAM LUMBER CO., Inc.

### No. 3480.

Court of Civil Appeals of Texas. Beaumont.

May 19, 1939.

Carville & Carville, of Plaquemine, La., and Sanders & McLeroy, of Center, for appellant.

Davis, Avery & Wallace, of Center, for appellee.

O'QUINN, Justice.

Suit by Haslam Lumber Company, Inc., a Texas corporation, against Jumonville Pipe & Machinery Company, Inc., a Louisiana corporation, to recover damages al-

leged to have been suffered by it because of the breach of a certain contract made and entered into by and between appellant and appellee for the sale of certain machinery by appellant to appellee.

The case was tried to the court without a jury, and judgment rendered in favor of appellee against appellant for $2,632.58 and costs of suit. From that judgment appellant brings this appeal.

Haslam Lumber Company was engaged in the manufacture of lumber, and Jumonville Pipe & Machinery Company was engaged in the sale and installation of machinery. The lumber company desiring to purchase a Diesel engine to aid in manufacturing lumber entered into the following contract with appellant for said engine:

"This Contract entered into by and between The Jumonville Pipe & Machinery Co., Inc., Plaquemine, La., and The Haslam Lumber Company, Inc., agrees to buy the following, upon the following terms and conditions:

"1. 1—120 HP Fairbanks-Morse Diesel Engine type 'Y' style VA being a full Diesel Engine equipped with extension shaft, outboard bearing and pully, it is agreed the Jumonville Pipe & Machinery Co., Inc., will furnish all parts belonging to the engine proper, however, they will not be bound to furnish miscellaneous parts such as pipe, valves and etc., however, they are to furnish 2 Air Tanks, 1 Air Compressor, 1 Circulating Water Pump, 1 Auxiliary Gas Engine to run Air Compressor, the price of this engine is $2800.00 delivered plant of Haslam Lumber Co., Inc., it is further understood that the Jumonville Pipe & Machinery Co., Inc., will furnish their Mr. Hawthorne to supervise the installation of engine, the Jumonville Pipe & Machinery Co., Inc., to pay Mr. Hawthorne wages and the Haslam Lumber Co., Inc., to furnish him with board and lodging while he is here, it is further agreed that Mr. Hawthorne is to stay with Haslam Lumber Co., Inc., for one week after engine is installed in order that he may instruct the operator of this engine to operate same.

"It is agreed that said engine will be delivered as soon as foundation is ready for engine to be placed on same.

"The terms of this sale shall be as follows: Price is $2800.00, the cash payment is $500.00 receipt of which is hereby acknowledged, the balance of $2300.00 to be liquidated as follows:

"It is agreed that Jumonville Pipe & Machinery Co., Inc., will take three (3) truckloads of lumber from Haslam Lumber Co., Inc., at prices quoted today the amount of this lumber to be deducted from the $2300.00 and the balance whatever it may be to be liquidated at $100.00 per month at 6% interest from date notes are made, it is agreed that the Haslam Lumber Co., Inc., will keep fire insurance covering this engine until same is paid out and furnish the Jumonville Pipe & Machinery Co., Inc., with said policy, it is also agreed Jumonville Pipe & Machinery Co., Inc., shall have a chattel mortgage on this engine drawn up by Davis, Avery & Wallace of Center, Texas, according to the laws of the State of Texas.

"(signed)    Signed by E. A. Jumonville, Secty.

"Wit: F. D. Hawthorne    Jumonville Pipe & Machinery Co., Inc.

"Wit:   Mrs. G. N. Dean

"Accepted by W. C. Garrett "Haslam Lumber Co., Inc."

Appellee alleged that the engine was a failure—would not perform as desired, that its purchase and the execution of the contract to purchase was procured by false and fraudulent representations of appellant, knowingly made for the purpose of causing appellee to execute the contract; that appellee was entirely ignorant as to the merits and availability of the engine to do and perform the kind of work desired, while appellant had full knowledge of its ability to do so, and that appellee relied wholly upon the representations of appellant, and that but for said representations would not have purchased said engine. All these allegations were denied by the appellant.

The first assignment asserts that appellee's pleadings did not allege such fraud as would entitle it to any relief for in that any prior agreements or parole representations, if any, were merged into the written contract (set out above) made at the time of the delivery of the machinery, and the execution of the notes and mortgage given to secure their payment, and having failed to allege material facts which were untrue, and known to be untrue by appellant, made by appellant for the purpose of deceiving and inducing appellee to enter into the contract, and but for which false representations it would not have made the contract, appellant's general demurrer should

have been sustained, and its refusal was error.

■ This assignment is overruled. We have briefly stated the nature of appellee's allegations of fraud, the pleadings, we think were sufficient as against a general demurrer.

The second assignment urges that appellee failed to allege and prove that the representations made to appellee by appellant alleged to be false and fraudulent were of material facts known by appellant to be untrue at the time they were made, and that they were made with intent to deceive and induce appellee to enter into the contract for the purchase of the machinery, and that it, appellee, relied upon said false representations and that but for said representations, it would not have made such contract, and it was error to enter judgment for appellee.

■ Appellee was manufacturing lumber. It desired additional machinery to add to the power it was then using. The manager of the lumber company contacted appellant and fully and frankly advised it of the nature and purpose of the wanted machinery. On the statements of appellant as to the worth, power, and availability of the Diesel Engine for the purpose wanted, which was later contracted for, the contract of purchase (set out above) was made. The engine proved ineffective. After considerable cavil, this suit was filed. We think the pleadings were sufficient and that the evidence supported the contentions of appellee. In equitable actions for fraud and deceit, it is generally held that knowledge on the part of one making misrepresentations that they are false, is not essential to support an action for fraud. In such cases a person is responsible for what he represents to be true whether he knows the same to be false or not. 20 Tex.Jur. sec. 23, page 42. Also, as to the intent of the one making the misrepresentation. It is held that in order to establish fraud, in such cases, it is not necessary to show that the representations were made with intent to deceive; the maker of the statement may be liable no matter how innocent his purpose. If the representations in fact mislead or deceive the persons to whom they are directed, or influence his conduct in a material matter, the result is, in the eyes of the law, the perpetration of a fraud. This on the ground that the one making the misrepresentations had better means of informing himself than the person who relied thereon. 20 Tex.Jur. Secs. 24-25, pages 44-47. The assignment is overruled.

The third assignment is that the court erred in rendering judgment for appellee, because the facts and circumstances show that the parties were dealing with each other at arm's length, and each relying upon its own judgment in making the sales contract. That appellee advertised for and then inspected the engine sold it to learn by examination the quality of the machine, and having accepted same after inspecting it, appellee bought same at its own risk, not having exacted any character of warranty under the contract.

■■ Appellant thus invokes the common law rule of "caveat emptor". In general one must rely on his own judgment and investigate before entering into transactions with others. The law does not place a premium on negligence or unreasonable credulity. Prudence and diligence should be exercised in the executions of contracts. But "when one has taken advantage of his superior position (and knowledge) to cheat or circumvent another who had no means of discovering the fraud, he will not be heard to assert that the innocent victim of his cunning took his chances without proper investigation. In other words when the rule that 'fraud vitiates every thing it touches' and the rule of caveat emptor present themselves in a case where one or the other must yield, equity must furnish the answer". 20 Tex.Jur. Sec. 32, page 55.

"The doctrine that one must rely on his own judgment and investigate before entering into transactions with others does not apply where the parties do not have equal means of information with respect to the facts. Relief is predicable on the circumstance that the parties are not dealing upon equal terms with each other—one knowing or professing to know whereof he speaks while the other is ignorant of the facts and is compelled to rely on the truth of the representations made. In other words a party making a representation should foresee the legal consequences thereof. He will be held liable if he knew or should have known that his statements would necessarily be relied on by the party with whom he was dealing, other elements of actionable fraud being present." 20 Tex.Jur. Sec. 33, page 57.

Appellant was familiar with the value and power of Diesel engines, having handled them for years, while appellee was entirely unfamiliar with them, not having used or handled them, being in the lumber manufacturing business. This was known to appellant on whose representations appellee acted.

■ The fourth and last assignment says that the evidence showing that the engine was in such condition that it could have been put in "first class running condition" for an amount not to exceed one thousand dollars, the court erred in rendering judgment against it, under any theory of the case, for any amount in excess of that sum.

This assignment is overruled. The court gave no indication of what theory he rendered the judgment on. The engine was sold for $2,800. Appellee offered evidence to show that its real or intrinsic value was not more than $300. There was testimony that the engine in its condition had only a scrap value of about $10 a ton. It weighed about 2,750 pounds. There was testimony that the base of the engine was warped, bowed and sprung and if so, it was "hopeless" and might just as well be thrown away—in other words worthless. It seems that this condition may have been caused by incorrect foundation. The installation of the engine was supervised by a Mr. Hawthorne on behalf of appellant, he, Hawthorne, to stay one week after it was installed, to instruct the operator of the engine how to run same. This was provided in the sale contract. Estimates of what it would cost to put the engine in the condition it was represented to be in when bought, ran as much as $1,500. Appellee sued for various items of alleged damages growing out of the contract, amounting to several hundred dollars, in addition to $2,500, the difference in value as represented and sold and its actual or intrinsic value. Appellee prayed for judgment in the sum of $2,950, or in the alternative for $750, together with the cancellation of the purchase money notes and mortgage given to secure the payment of same, costs, etc. The judgment was general in form. No complaint is made that the judgment is excessive, but that it should not have been granted in any sum. No findings of fact or conclusions of law were filed or requested. We think that the judgment has support in the record, and it is accordingly in all things affirmed.