### WEWERKA et al. v. LANTRON.
### No. 5566.

Court of Civil Appeals of Texas. Amarillo.
Sept. 20, 1943.

Rehearing Denied Oct. 25, 1943.

J. W. Spivey, Jr., of Borger, for appellants.

F. P. Works, of Amarillo, and K. H. Dally, of Borger, for appellee.

FOLLEY, Justice.

This suit was filed by the appellee, E. L. Lantron, ice manufacturer and dealer of Borger, Hutchinson County, Texas, against the appellants, El Reno Ice Company, a copartnership, manufacturing ice at Borger and seven other points in Texas and Oklahoma, and Wayne Yarbrough, local manager of such ice company at Borger, and the individual members of such partnership, including Fred A. Wewerka, of El Reno, Oklahoma, general manager of all of the appellants' plants. Appellee sued for damages for the alleged failure of appellants to carry out the terms of an oral agreement alleged to have been made between him and Wayne Yarbrough, as agent for the partners, for the lease of appellee's ice manufacturing plant at Borger for a period of five years.

Appellee claims that negotiations began the latter part of May, 1942, between him and Wayne Yarbrough, which culminated in an oral agreement on May 29, 1942, by which the El Reno Ice Company was to take charge of his plant on June 1, 1942, under a five-year lease at a monthly rental of $125 per month, with an option to continue such agreement for an additional five-year period.

Appellee alleged that as a part of such agreement it was understood that he would not engage in the ice business in Hutchinson County during the life of such lease and that the lease might be terminated in the event any competing ice manufacturing plant was erected in said county, from which ice was sold at wholesale or retail. He further alleged that as a part of such agreement it was understood that he should purchase three retail ice docks in Borger from Tom W. Caldwell, who purchased ice at wholesale from appellee and sold the same at retail under a contract with appellee. He also alleged that on June 2, 1942, a written instrument was presented to him for his execution, purporting to express the terms of the oral agreement; that the same provided that the lease might be terminated if any person, firm, or corporation other than the appellants should engage in the business of selling, distributing, or delivering ice within a distance of ten miles of Borger and continued the same for ten days; that the appellee, upon being presented with such written instrument, could not and did not execute the same, because such a provision as to competition would have authorized appellants to terminate the lease by any small or insignificant sale of ice in Borger, such as would constitute no real interference with appellants' ice business; and that on June 1, 1942, prior to the receipt of the written instrument the next day, appellants took charge of the three ice docks formerly owned by Tom W. Caldwell, which, in pursuance to and as a part of the oral contract, appellee had purchased from Caldwell on May 29, 1942. Appellee set out several items of damages in his petition, which he alleged he had sustained by reason of appellants' refusal to carry out the oral contract, but, from the view we take of this case, as will hereinafter appear, the nature and amount of the damages become immaterial.

The written contract, which was prepared by Fred A. Wewerka at El Reno, actually contained a provision empowering the partnership to terminate the lease at its option in the event any other party or parties should establish within ten miles of Borger a plant for the manufacture, sale, or distribution of ice, or if any person, firm, or corporation, except the lessee,

should engage in the business of selling, distributing, or delivering ice within the limits of the territory described and should continue said sale and distribution or delivery of ice for a period of ten days.

The pleadings of appellants which we deem material were with reference to agency and the statute of frauds. They pleaded that Wayne Yarbrough was without authority, either express, implied, or apparent, to bind the copartnership, and that if any contract was entered into between Yarbrough and appellee, the same was not within the scope of Yarbrough's authority and they were not bound thereby. They also alleged that the purported oral contract forming the basis of appellee's cause of action was for the lease of real estate for a term of more than one year and was therefore contrary to the statute of frauds, Article 3995, Vernon's Ann.Civ.St., and also of the statute of conveyances, Article 1288, Vernon's Ann.Civ.St.

In a trial before a jury the appellee recovered judgment for the sum of $1,558, against Fred A. Wewerka and two other partners of the ice company, and also against Wayne Yarbrough, the alleged agent.

In his brief the appellee concedes that the assignment of error of appellants relative to the judgment against Yarbrough, the agent, should be sustained, and admits that the suit against the agent should have been only in the alternative, citing 2 Tex. Jur. 646, § 224. We therefore assume that appellee elects to stand solely upon his recovery against the principals sued, and abandons his claim against the agent. 2 Tex.Jur. 647, § 225.

Although appellants present numerous points for our consideration, we think the questions of agency and the statute of frauds are decisive of the case.

The testimony shows that Yarbrough was merely the local agent of the partnership at Borger, with actual authority to operate only the local Borger manufacturing plant belonging to the partnership, to employ and discharge employes, regulate and supervise the sale of ice, and to purchase any supplies needed at the plant, but he might not make any purchase in excess of $50 without the authority and approval of Fred A. Wewerka, the general manager at El Reno. Yarbrough was not authorized to sign any checks for the partnership. Even the payroll checks were signed at El Reno

by the general manager. It was not shown that the agent had ever leased such a plant from anyone else at any time or that appellee knew of any authority of similar character manifested by the agent, or that the appellant partners knew that the agent had ever held himself out as having authority to make the oral agreement. After the date of the alleged oral agreement no act was done by any of the principals in the partnership, recognizing or in any manner ratifying the terms of the oral agreement. There is also an absence of any testimony that the partnership had clothed the agent with the indicia of authority so as to lead a reasonably prudent person to believe that the agent actually had authority to make such a contract. In fact, there is no testimony of any acts of the partners which would lead a prudent person to believe the agent's authority was greater than it actually was. The only conduct upon the part of anyone, other than appellee, tending in any manner to confirm or recognize the oral contract as binding was to the effect that Yarbrough hired someone to paint out the price signs upon the three Caldwell ice docks and re-paint the signs at increased prices. This occurred on June 1 and June 2, 1942, and was within the knowledge and with the apparent consent of appellee, but without the knowledge or consent of any of the appellant partners.

From the appellee's own testimony it is evident that he understood that the terms of the agreement would be submitted to the general manager at El Reno for his approval and that the agreement would be reduced to writing. After the tentative agreement was made between him and the agent, he was informed by Yarbrough that a written contract would be sent from El Reno. Appellee also knew, during the negotiations, that Yarbrough had sent a telegram to the general manager and that he had also talked with the general manager over the telephone, outlining the general terms of the agreement. However, so far as the evidence reveals, there was nothing in these communications to indicate that Wewerka was delegating any authority to Yarbrough to enter into any sort of a binding contract with appellee, but, on the contrary, such communications constituted merely negotiations leading up to the possible meeting of the minds of the contracting parties to be expressed in a written contract.

■ Under our view of the facts, there was no meeting of the minds between the appellee and the principals upon an enforcible agreement, nor was the evidence sufficient to show any actual, implied, or apparent authority of the agent to enter into a binding oral contract for the partnership. Although the evidence as to actual or implied authority of the agent comes chiefly from the appellants, the same is uncontroverted and there are no facts or circumstances casting any suspicion upon it. It is therefore apparent that no liability was established by reason of any actual or implied authority of the agent. Under the evidence, we also think that the law excludes the theory of apparent authority.

■ In Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050, 1052, writ refused, the Waco Court of Civil Appeals, speaking through Justice Alexander, and citing 1 Words and Phrases, Third Series, page 507 defined "apparent authority" as follows: "By apparent authority is meant such authority as a reasonably prudent man, using diligence and discretion in view of the principal's conduct, would naturally and reasonably suppose the agent to possess."

In the same opinion it is further stated: "Apparent authority is based on estoppel, and can arise from but two sources: First, the principal may knowingly permit the agent to so hold himself out as having such authority, and in this way the principal becomes estopped to claim that the agent does not have such authority. * * * Second, the principal may so clothe the agent with the indicia of authority as to lead a reasonably prudent person to believe that he actually has such authority."

■ In 2 C.J.S., Agency, p. 1214, § 96, on the question of apparent authority, we find this language: "Of course, no apparent authority grounded upon a course of conduct is assertable in the absence of even a single precedent act or transaction to manifest the existence of the power claimed; a course of conduct of a particular character does not exist where there is an utter absence of any conduct whatsoever of the character supposed."

In 2 C.J. 574, § 214, on this same question, it is said: "The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent."

In view of the record and the law upon the subject, we must sustain the assignment relative to the agent's lack of authority to bind the appellant partners. Great American Casualty Co. v. Eichelberger, supra; Continental Oil Co. v. Baxter, Tex. Civ.App., 59 S.W.2d 463; Griffin v. Phillips Petroleum Co., Tex.Civ.App., 139 S.W.2d 318; Ledgerwood v. Dashiell, Tex.Civ. App., 177 S.W. 1010, writ refused; Lewis v. Brown, 39 Tex.Civ.App. 139, 87 S.W. 704, writ refused; Shippers' Compress Co. v. Northern Assur. Co., Tex.Civ.App., 208 S.W. 939, writ refused; 2 Tex.Jur. 425, § 39; Lane et al. v. Sullivan, Tex.Civ.App., 286 S.W. 541.

In connection with the assignment relative to the statute of frauds and the statute of conveyances, it should be stated that, in our opinion, no fraud or inequities were established which would take this case out of the general operation of the statutes. In answer to such assignment, appellee contends that the agreement as to forfeiture takes the case out of the statute because the lease might have been terminated within a year provided some third party had sold ice in Borger in violation of the agreement.

■ We think the position of appellee with respect to this matter is untenable. The statutes in question look to the performance, and not the defeat, of a contract and, although the contract might have been defeated within a year, it is obvious that the five-year lease could not have been substantially performed within a year. As pertinent to this subject, in 27 C.J. 176, § 93, we find this rule: "An oral contract which by its terms or by the understanding of the parties is not to be performed within a year, although subject to a defeasance by the happening of a certain event not within the control of either party, which might or might not occur within that time, is, by the weight of authority, within the statute of frauds. The statute looks to the per-

**634**

formance, and not the defeat, of the contract; a defeasance within a year would not constitute a performance according to the expressed intent of the parties that performance should continue longer than a year." See also 37 C.J.S., Frauds, Statute of, § 48.

The above rule, resting as it does on the expressed intention of the parties that the contract is not to be performed within a year, should be distinguished from another rule that the statute does not apply to contracts which do not expressly postpone performance beyond a year, and depend upon the happening of a contingency which, if it occurs within the year, will amount to a complete performance of the contract. 27 C.J. 180, § 98; 37 C.J.S., Frauds, Statute of, § 54; Keller v. Mayer Fertilizer Co., 153 Mo.App. 120, 132 S.W. 314.

We therefore also conclude that the oral contract sued upon falls within the statutes in question and, under the pleadings and the record made, is unenforcible.

The judgment will be reversed, and judgment will be rendered for the appellants.