**HEARN et al. v. HANLON–BUCHANAN, Inc., et al.**

**No. 14612.**

Court of Civil Appeals of Texas. Fort Worth.

Feb. 18, 1944.

Rehearing Denied March 24, 1944.

Smoot & Smoot, of Wichita Falls, for appellants.

James E. Allison, of Tulsa, Okl., and Rogers & Montgomery, of Wichita Falls, for appellees.

SPEER, Justice.

Mark N. Hearn and Guydell Hearn and their respective wives, to whom we shall refer as plaintiffs, sued Hanlon-Buchanan, Inc., and Henaghan & Hanlon, Inc., as corporations, to which we shall refer as defendants, to recover $1500 represented by two drafts for $750 each.

Plaintiffs resided in California and defendants had their place of business and general offices at Tulsa, Oklahoma. Defendants held an oil and gas lease on a large body of land in Clay County, Texas, in which tract plaintiffs owned 150 acres. Defendants desired an extension of the lease and requested George C. Meredith, a broker at Jacksboro, Texas, to ascertain from the original lessor if the extension could be obtained. Lessor had died since executing the original lease and plaintiffs, her grandsons, had inherited 150 acres of the tract. Defendants sent Meredith a typewritten form of extension, such as they wanted. Meredith advised defendants that lessor was dead and the heirs would have to be located and that he would investigate and advise defendants what he could find out before closing any renewal proposition. Meredith employed G. C. Rounsaville, who lived near the land and knew plaintiffs, to contact them and find out upon what terms the extension agreement could be had. Plaintiffs wrote Rounsaville they wanted $1500 for the extension. Rounsaville notified Meredith of plaintiffs' requirement of price and further that they would expect the extension agreement to obligate lessees to drill a well on the land to a depth similar to other production in the area. When Meredith saw plaintiffs' letter, he told Rounsaville, substantially, that they would send the extension agreement to plaintiffs and try to close it, but that he did not think defendants would pay that price for the extension. Defendants had previously sent to Meredith a form of extension they desired, for use by him when satisfactory arrangements had been made. Meredith drew

two drafts on defendants through National Bank of Tulsa, Oklahoma, for $750 each, attached to them the prepared form of extension and gave them to Rounsaville for transmission to plaintiffs. The extension agreement was executed by plaintiffs, and delivered by them to a California bank for transmission, along with the two drafts. The "Customer's Drafts" had written across the top of each these words: "For collection and approval of extension agreement attached by James E. Allison on the Laura Newton Lease, T. E. & L. Sur. Nos. 2673 and 2674." The drafts were drawn on a form used by First National Bank, Jacksboro, Texas, and one of which was payable to each of the plaintiffs in the sum of $750.00. Both drafts were: "To Hanlon-Buchanan, Inc., Henaghan & Hanlon, Inc., National Bank of Tulsa, Tulsa, Oklahoma," and signed by George C. Meredith.

When the extension agreement, which accompanied the drafts, was sent to the drawee bank and defendants' attorney examined it, there had been written into it a provision which was not in the instrument when sent by defendants to Meredith. The added portion was so placed in the instrument as to break into the middle of another provision thereof. The following inside quotation is the part which had been added: " * * * said lease is extended as a single lease covering all of said lands as to all royalty and mineral interests for which the undersigned is empowered to join—'it being understood that in the event of drilling the well will be drilled to the depth of the Shell pay on the Henderson lease'—in such extension of said lease * * *."

The added provision was referred to as being at the bottom of a page in the instrument, which indicates that it was added at that place because sufficient space was found there for it.

On October 6, 1942, defendants wired plaintiffs that their price was too high and asked them to reduce it. On October 7, 1942, plaintiffs wired defendants, declining to reduce the price. On October 14, 1942, defendants wired plaintiffs, declining to accept the extension agreement and pay the drafts, and advised they were drilling on the land. It was stipulated that the extension agreement and drafts were returned to plaintiffs on October 13, 1942, and further stipulated that the well was completed as a producer and was flowing on November 13, 1942 (two days before the expiration of the original lease held by defendants).

Trial was to a jury. At the conclusion of taking testimony, defendants moved for an instructed verdict. The motion was denied. Upon special issues the verdict was in all respects favorable to plaintiffs. Motion for judgment non obstante veredicto was filed by defendants and upon notice, appearances and a hearing, judgment was entered for defendants notwithstanding the verdict. The plaintiffs have appealed.

Appropriate points complain of the action of the court in entering judgment non obstante veredicto, and in refusing to enter judgment for plaintiffs on the verdict. These points are briefed together and we may so discuss them.

As we view this record, the controlling questions are: (1) The nature of Meredith's agency and (2) the extent of his authority to bind defendants thereunder.

■ For purposes of this opinion it may be said that agencies as a rule are either general or special. When agency is established without a showing of its extent, it will be presumed to be general and not special. 2 Tex.Jur. 406, sect. 21. In the instant case the testimony without dispute shows the extent of Meredith's agency and we need not pay further attention to general agencies.

■ Plaintiffs called Meredith to the witness stand and proved by him the nature of his employment and on cross-examination he detailed the manner of his employment and the particular duties he was to perform. This testimony was admissible. In some cases broad language has been used to the effect that agency cannot be proved or disproved by the declarations of the alleged agent, but such expressions are applicable only to declarations made when not called to testify and are not applicable when the purported agent is called to give direct testimony upon the trial concerning such matters. Slaughter & Veal v. Schneider, Tex.Civ.App., 289 S.W. 414, writ dismissed. 2 Tex.Jur. 538, sect. 137.

Meredith testified in effect that he was a broker and oil operator; maintained an office at Jacksboro, Texas; had blocked acreage for defendants on special contracts before; had done other services for defendants when called upon, and was paid each time for such services as he performed. He had many clients in his busi-

ness; his custom in the past with defendants was, that if they wanted him to do something for them they would write him to that effect, and if it was to buy a lease for them they would tell him how much to pay; he had sometimes offered to sell leases to defendants and attached drafts thereto; some have been accepted, others have been rejected; he had never at any time determined for defendants what they would pay for property; his instructions as to prices have always come from either Mr. Boyles, the secretary, or Mr. Allison, the attorney; it was his custom in the past when he sent leases and drafts, to indicate that they were for inspection and approval of Mr. Allison; if Allison did not approve them, they did not go through.

Meredith said he had received a letter from defendants about procuring an extension of the lease involved, and in giving the substance of the correspondence he said defendants wanted to see how cheap they could get the extension. The letter referred to by the witness was in evidence. It was dated August 17, 1942, was signed by J. H. Boyles; in substance it advised Meredith of the early expiration of the Newton lease; and expressed doubt if they could save the lease before its expiration; the letter concluded with this language: " * * * Therefore, we must act promptly and I ask that you kindly see what you can do with Mrs. Newton (original lessor) without delay." On August 19, 1942, Meredith wrote defendants, acknowledging receipt of their letter, and advising that Mrs. Newton was dead; that he would get in touch with the heirs: "I will comply with your letter and advise what can be done in regard to extension. * * * I will advise you best that can be done before closing any renewal proposition." None of the foregoing facts was in any way contradicted. So it must be said that clearly Meredith's agency was special and not general.

It is the settled rule that any one dealing with a special agent is bound at his peril to inquire of such agent's instructions —to ascertain the extent of such agent's authority. 2 Tex.Jur. 408, sect. 24.

In 2 Tex.Jur. 406, sect. 22, this is said: "A special agent cannot exercise authority in excess of his powers, which must be ascertained from the language used in conferring authority upon him." In the same section we note this language: "If a special agent exceeds his authority, the principal is not bound." To these general rules may be added: He may also do such other things in connection with his assigned duties as are apparently necessary to accomplish the end sought by the principal through the agent. Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050, writ refused. The cited case thoroughly discusses general and special agencies and collates many authorities for the rule announced. It is held in the Eichelberger case, supra, that by apparent authority of the agent is meant such authority as a reasonably prudent person, using diligence, in view of the principal's conduct, would naturally suppose the agent to possess. It was also held there, that apparent authority is based on estoppel, and arises from one of two sources: (1) When the principal knowingly permits the agent to hold himself out as having the authority imputed to him, and (2) when the principal clothes the agent with the indicia of authority so as to lead a reasonably prudent man to believe he actually has such authority. The same rules are again announced in Wewerka v. Lantron, Tex.Civ.App., 174 S.W.2d 630, 632, writ dismissed, want of merit.

In 2 C.J. 574, § 214, this is said: "The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself, by his acts or conduct, has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority * * *." See also 2 C.J.S., Agency, § 96.

We find no testimony in this record which remotely tends to show that defendants did or said anything in connection with the drafts sued on, upon which plaintiffs could rely to estop defendants from asserting a lack of apparent authority in Meredith to agree with plaintiffs upon an amount to be paid for the extension agreement. There is no testimony before us tending to show that Meredith ever at any previous time did or was instructed by defendants to do such things as plaintiffs claim he did in this case. His original letter of instructions asking him to find out if an extension agreement could be had and his reply that he would do so and advise defendants of the result before closing any proposition, refute all implied general pow-

ers that might be imputed to him by virtue of a general agency; nothing appears to show these powers were ever enlarged. It is certain that plaintiffs were not misled to their detriment by anything defendants may have said or done because they never knew any part of it. When we consider the powers and duties actually enjoined upon Meredith, even if known to plaintiffs, his implied powers and duties to effectuate the purposes of his agency could not be said to lead any prudent man to believe he could fix the price defendant was to pay and obligate it to drill a well of specified depth in addition to simply ascertaining if an extension agreement could be obtained. See Wewerka v. Lantron, Tex.Civ.App., 174 S.W.2d 630, writ refused, want of merit, and National Cash Register Co. v. Wichita Frozen Food Lockers, Inc., Tex. Civ.App., 172 S.W.2d 781, affirmed Tex. Sup., 176 S.W.2d 161.

 It is not shown that plaintiffs knew anything about Meredith's agency, such as it was; they did not know him, they dealt with Rounsaville, their former neighbor and friend. To avail plaintiffs of their plea of estoppel, they must show that some act or acts of defendants caused them to alter their situation to their detriment by a reliance thereon. Fenner & Beane v. Lincoln, Tex.Civ.App., 101 S.W.2d 305. In the last cited case, the court again discusses the principles of estoppel applicable to the apparent scope of a special agent's authority, especially when, as in this case, the complaining party knew nothing of the agency and its restrictions, between the defendant and the purported agent; in such circumstances, it is held that such acts of either the principal or agent, when unknown to the third party, may not be considered. Plaintiff recovered in that case, but the judgment was reversed and rendered by the appellate court.

· [14] It may be conceded that an agent may employ a subagent and delegate to him matters of a ministerial nature requiring no act or discretion entrusted by the principal to the agent, but where, as in this case, it is "obvious that when the agent (Meredith) himself has no authority to do the act in controversy (fix the price of the lease) he lacks authority to delegate the doing of it to some one else". 2 Tex.Jur. 472, sect. 76.

It is argued by plaintiffs that since Meredith had testified that defendants wanted him to see how cheap he could get the renewal, this furnished some evidence that there had been additional communications between him and defendants as to his authority, which plaintiffs had been unable to procure. We also note that Meredith, in attempting to summarize what defendants had asked him to do, said he had had no communications from them except the extension agreement and "a request to see what I could get them for." When we consider the actual language used in the correspondence, quoted in other parts of this opinion, we think the witness' short-hand form of the meaning of such instructions are not unreasonable deductions from the language used. The contention of plaintiffs is no more than a surmise or suspicion that something was said and done, not disclosed by the testimony. It is also argued in effect that irrespective of who wrote the additional provision in the instrument obligating defendants to drill a well to a specified depth, defendants did not reject the purported renewal instrument because of that provision. While it is true defendants did not specifically object to the document because of that provision, yet it is reasonable to assume that the more onerous the conditions and provisions of a contract, the less attractive it is to the one upon whom the burden is imposed, and this naturally would affect the price to be paid.

 Under familiar rules of law in such cases as this, we must consider all testimony in its most favorable light to the one against whom a judgment non obstante veredicto has been entered. Therefore it must be conceded that Meredith wrote the extra provision in the instrument as testified to by Rounsaville, although Meredith denied it. A purported carbon copy of the original was introduced in evidence and it did not contain the controverted provision. If Meredith did so alter the original instrument (and it cannot be said that the alteration was immaterial), clearly its execution in its altered form was different from what it was when entrusted to Meredith by defendants, and all was unknown to plaintiffs. The manner in which the alteration was made, in the middle of another sentence and provision, even though one did not detect that it had been written on a different typewriter, it occurs to us was such as to put a person of ordinary care on inquiry as to why it appeared in that form. Certainly such alteration cannot be traced to defendants, for plaintiffs did not

know Meredith nor that defendants had invoked his aid in the matter. To say the least of the situation, absent fraud and mutual mistake, the minds of plaintiffs and defendants did not meet on the proposed instrument. Wewerka v. Lantron, Tex. Civ.App., 174 S.W.2d 630, 633, writ refused, want of merit.

Plaintiffs argue here, in effect, that since agency of Meredith was admitted by defendants, and defendants having offered no testimony as to instructions given Meredith, it will be presumed that Meredith had all necessary authority to do whatever was necessary and proper for the performance of his agency in the matter, and this embraced Meredith's authority to agree on the price to be paid. They cite such cases as Birge-Forbes Co. v. St. Louis & S. F. R. Co., 53 Tex.Civ.App. 55, 115 S.W. 333, writ refused. In that opinion, however, the court announced the rule to be: "Every agency, *unless expressly limited,* carries with it, as an incident to do whatever is necessary * * *." The italicized words by us make the difference in the rule there announced and in the case before us. The limitations put on Meredith's agency are undisputed in this record.

We hold that this record is wholly void of any evidence of a general agency in Meredith, and that there are no facts or circumstances of probative value tending to show that Meredith could be said to be acting within the scope of his apparent or implied authority to agree with plaintiffs, if he did so agree, on the price to be paid for their extension agreement, and thereby bind defendants. All points raising these questions are overruled.

Seventh and eighth points complain of the judgment notwithstanding the verdict, especially applicable to the notations put on the drafts by Meredith when they were sent by Rounsaville to plaintiffs. For a better understanding, we repeat those notations: They were, "For collection and approval of extension agreement attached by James E. Allison on the Laura Newton lease, T. E. & L. Sur. Nos. 2673 and 2674". Meredith testified that his intention in putting that notation on the drafts was to enable James E. Allison to pass on the extension agreement and the amounts to be paid before acceptance by defendants. Plaintiffs' construction of the language was to the effect that the drafts and extension agreement were being sent to plaintiffs so

that they could examine and approve the agreement and collect the $1500 they had offered to take for executing the instrument. The jury found in favor of plaintiffs' contention. The error assigned is that the court should not have disregarded the jury finding, supported as it was by the testimony of plaintiffs.

Much is said in briefs of all parties pertaining to a proper grammatical construction of the language used. We do not think it necessary for us to make such an analysis of the language employed. As has been pointed out above, we must consider the testimony in its most favorable light to plaintiffs. This means that we must adopt plaintiffs' construction of the language used. Plaintiffs construe the drafts and endorsements thereon to mean James A. Allison, whom they knew to be defendants' general attorney, had drawn the drafts and attached the extension agreement, and that by this act the price of $1500 named by plaintiffs for the agreement, had been accepted. Under the undisputed testimony in this record, this construction and assumption by plaintiffs were from a misunderstanding of the true facts. Meredith, the special agent, had done the things that plaintiffs thought had been done by defendants. From plaintiffs' point of view their offer to accept $1500 for signing the agreement had been accepted by defendants. But not so; such acceptance as it was, was by Meredith. The undisputed evidence in the case shows that Meredith had no such authority to agree with plaintiffs on a price to be paid. There is nothing in the record to indicate that defendants accepted same or did any act to estop them from denying Meredith's authority to accept the offer. If we are correct in the conclusions expressed in the former part of this opinion, relating to Meredith's duty, power and authority as agent for defendants, then we think it becomes immaterial what kind of language was used by Meredith in his purported effort to accept plaintiffs' offer of sale and bind defendants. This he could not do under the facts of this case. The authorities above cited preclude the presumption, under the facts in this case, that Meredith had the apparent authority to fix the price or agree upon the price defendants would pay for the extension agreement. For the reasons stated, points seven and eight are overruled.

Ninth point of error complains of the ruling of the court in excluding the

testimony of plaintiffs as to the contents of a lost or destroyed letter, sent them by Rounsaville when he transmitted through plaintiffs' mother the extension agreement and two drafts sued on. In this we think there was no error. Rounsaville, the writer of the letter, was definitely shown by his own testimony not to be the agent of defendants in any respect, but that what he did was as a subagent or employee of Meredith. The bill of exception shows that by the terms of the lost letter, plaintiffs were apprised by Rounsaville that plaintiffs' offer to sign the renewal lease for $1500 had been accepted, and that plaintiffs should execute the agreement and have their bank collect the money on the drafts. This would have meant that Rounsaville was purporting to act in lieu of defendants, in such acceptance. What we have already said relating to agency of defendants disposes of this question adversely to plaintiffs' contention.

We conclude that the judgment notwithstanding the jury verdict was proper and the judgment should be affirmed. It is so ordered that this be done.