Jesse BOLIN, Appellant,

v.

PACIFIC FINANCE CORPORATION,
Appellee.

No. 6398.

Court of Civil Appeals of Texas.

Amarillo.

April 12, 1954.

Rehearing Denied May 17, 1954.

**880**

Jackson C. Burroughs, Dallas, for appellant.

Irion, Cain, Bergman & Cocke, Dallas, for appellee.

PITTS, Chief Justice.

Appellee, Pacific Finance Corporation, filed suit against appellant, Jesse Bolin, for the sum of $66,835.65, evidenced by certain notes, contracts and mortgages, together with attorney fees in the sum of $6,683.57, aggregating the sum of $73,519.22 with interest thereon. Appellant answered, in effect, that a new subsequent oral agreement was entered into between appellant and appellee's agent, Kirkland, whereby appellant was released from liability of the said obligation upon appellant helping to liquidate his assets and turning over to appellee the proceeds from the sale of certain automobiles upon which appellee had a mortgage, together with certain furniture and fixtures, in full settlement of the said sum as the balance of his original debt and if there was any question about Kirkland not having actual authority as appellee's agent to make such a contract, the said Kirkland had at least apparent authority to make such a contract, which was ratified by appellee in any event. The case was tried beginning on July 6, 1953, to a jury which found in part on July 10, 1953, that Kirkland of the Pacific Finance Corporation entered into an agreement with appellant during January, 1949, to release him from all liability on his notes and contract upon his helping to liquidate his assets and turning the proceeds therefrom over to appellee; that Kirkland had apparent authority from appellee to make such an agreement; that appellant

carried out the terms of the agreement; and that appellee through its officers or agents ratified the agreement. In connection with the submission of the issues on apparent authority and ratification the trial court instructed the jury as follows:

> " 'Apparent authority', as used in the foregoing issue, means that authority which a person appears to have by reason of the actual authority which he has, and which he exercises with the knowledge and ratification of the principal, Pacific Finance Corporation.

> "The term 'ratify', as used in this charge, means the approving, adopting or confirming by Pacific Finance Corporation, as its own, an act previously done by another in its stead and for its benefit but without its authority."

Thereafter on July 16, 1953, appellee filed its motion for judgment non obstante veredicto on the alleged grounds that there was no evidence heard to justify the submission of issues to the jury on the questions of Kirkland's apparent authority and appellee's ratification of an agreement, if any, made by Kirkland with appellant and that there was no evidence in the record to support such jury findings. On October 7, 1953, appellant filed his motion for judgment on the jury verdict. Both motions were heard by the trial court on October 7, 1953, and on October 22, 1953, appellant's motion for judgment was overruled and appellee's motion for judgment non obstante veredicto was sustained and judgment was accordingly rendered, from which appellant perfected his appeal to the Dallas Court of Civil Appeals and the same was transferred to this court by the Supreme Court in equalizing the dockets.

On page 39 of his brief appellant's counsel says that, "This meeting" (meaning the things that happened there in Dallas between J. A. McFadden and Kirkland of the Pacific Finance Corporation and appellant on or about January 14, 1949) "is the basis of this case". The record reveals that J. A. McFadden was appellee's vice-president and regional manager of the southwest di-

vision covering Texas and Oklahoma with his office in Houston, Texas, and that his duties were "to supervise appellee's activities in that region, personnel-wise, production-wise, and in certain phases of appellee's over-all operation". He testified at length concerning his duties and the transactions out of which this cause arose. Kirkland was appellee's branch manager of the Dallas office in January of 1949 but he was no longer with appellee at the time of the trial and did not testify in this case. Throughout his brief and argument appellant's counsel claims that at the meeting of the three persons just mentioned, Kirkland made the oral agreement in question with appellant in the presence of and accompanied by appellee's vice-president, J. A. McFadden, and he seems to contend that the presence of McFadden, appellee's vice-president, on such occasion constituted apparent authority or at least an element of apparent authority on the part of Kirkland as appellee's agent. As hereinafter shown, there is no evidence to support the claim that McFadden was present when the alleged oral agreement was made. Argument of appellant's counsel based upon such a claim is therefore without any factual support. Assuming, however, that McFadden may have been present at such a time, his presence, for reasons hereafter stated and under authorities cited, would not have been sufficient to create apparent authority for Kirkland to have bound appellee. On page 40 of the said brief appellant's counsel says that, although McFadden testified he knew of no such agreement made between Kirkland and appellant, appellant himself testified that at such meeting of McFadden, Kirkland and himself, Kirkland made the oral agreement in question and "that they agreed that if he (the appellant) would stay on the lot and help liquidate the cars, that they (the Corporation) would give him a complete release of all liability of the Corporation (S.F. Pg. 200–201) (S.F. Pg. 371 L. 8 to L. 25 Pg. 372)". Although it appears that appellant's counsel, by using the plural pronoun "they", means to imply that McFadden helped to make the agreement, an examination of all of the evidence, and

particularly the pages of the statement of facts cited by appellant's counsel, reveals that appellant at no time testified that Kirkland made such agreement "in the presence of and accompanied by appellee's vice-president, J. A. McFadden". On pages 200–202 appellant testified that he was not sure and could not be positive that McFadden was present at such a time but that a Mr. McGowan and Mr. Kirkland were present when the agreement was made. On pages 371 and 372 cited by appellant's counsel, appellant testified that he had a conference with Mr. Kirkland, a Mr. Smith, a Mr. McGowan and he believed a Mr. McBride when "they promised to give me a release if I would stay with them until the cars were liquidated". However, appellant pleaded only that Kirkland promised him a release and that he relied on the oral agreement made with Kirkland, but that no release was ever given to him. Appellant does not here contend that McGowan, Smith or any agent of the appellee's other than Kirkland promised him a release.

Appellant admits that appellee's account sued on is correct, but he seeks to defeat it on the grounds that he had been released from the obligation by appellee's agent, Kirkland, who had apparent authority to make such agreement and that appellee ratified the acts of the agent. Appellant therefore concedes that the controlling questions to be here determined are those of Kirkland's apparent authority to bind appellee and whether or not his alleged oral agreement was ratified by the officers or agents of appellee. Appellant pleaded the execution of such a new contract as a defense for the first time, however, according to his own testimony, in his second amended answer filed more than a year and a half after he had filed his original answer in this action. He repeated such allegation somewhat amended in his third amended answer upon which he went to trial. Appellant contends that apparent authority of an agent and ratification may be established by circumstances as well as by facts. In considering circumstances, however, it may be well to examine the circumstances both for

and against the issues being considered. Appellant testified that his suit was filed on December 1, 1949; that his original answer was filed December 20, 1949; and that he pleaded the execution of a new contract as a defense for the first time in his second amended answer filed on July 2, 1951. The record does not reveal when appellant filed his first amended answer or what it contained. It does reveal that he filed his second amended answer on the date previously herein stated and that he there alleged for the first time that such a new contract had been executed by appellee but he did not there allege who acted for appellee in the execution of the new contract or when such was executed. Neither did he there allege apparent authority or ratification of the contract by appellee. For some reason these matters were not alleged as defenses by appellant for a period of approximately one year and nine months after he had filed his original answer in this suit or until he filed his third amended answer on September 13, 1951, although appellant must have known about the execution of the alleged new oral contract between him and Kirkland since January, 1949, if such had been executed as alleged. Appellant's delay in making such defensive claim is a circumstance of interest. Nevertheless, the burden rested upon appellant to establish his alleged claims of apparent authority of Kirkland and ratification by appellee of Kirkland's alleged acts. Appellant cites many authorities in support of his claims and we find no fault with the rules of law cited by appellant but it is our opinion that appellant failed under the rules of law cited by him to offer sufficient proof of probative force to raise an issue on apparent authority or ratification and particularly to meet the requirements of the instructions given by the trial court as to what it takes to constitute "apparent authority" and "ratification".

The record reveals that on or about January 14, 1949, McFadden was in Dallas and that some question had been raised about appellant having sold several of the automobiles in question without having paid the proceeds therefrom to appellee and that McFadden and Kirkland, the local branch manager, went to see appellant at his used car lots in Dallas concerning this and other matters of common interest, thus constituting the meeting of the said three persons previously herein referred to. The three did there agree that appellant would help to liquidate his stock on hand and apply the proceeds therefrom on appellant's obligation to appellee. According to the record the liquidated assets were applied on appellant's obligation, which reduced it to $66,835.65, the amount here sued for, together with attorney fees and interest. According to the record the only consideration that could have moved to appellee as a result of the alleged release agreement was the sum of $265 received by appellee for the sale of the furniture and fixtures in question, for which credit was given appellant on his debt, together with reasonable compensation to appellant for his part time services in helping for a few weeks to liquidate the stock, provided a claim was made for such services. The exact time he worked in connection therewith is not reflected by the record. Neither does the record reveal any specified sum claimed by him for his services. Appellant claims, however, that appellee through Kirkland released him from a deficiency of at least $66,835.65 for a consideration of only a few hundred dollars, which would be a very slight consideration at most.

At any rate there is no testimony, even from appellant himself, to the effect that Kirkland agreed on the occasion when the three met together on the used car lots and in the presence of McFadden to release appellant from further obligation when such liquidation had been completed. There is no allegation or proof that McFadden ever did or said anything to appellant about the alleged agreement or that he knew about such agreement until long after this suit was filed. Appellant testified that such agreement was made in a hotel room when Kirkland, Smith, McGowan and possibly McBride were all present. McFadden testified positively that he was not present with

these named parties at any time in a hotel room. Such testimony was not controverted. Therefore there is no evidence to the effect that J. A. McFadden was present at the alleged conference when appellant claims Kirkland agreed to release him from the deficiency in question. McFadden likewise testified that neither he nor Kirkland had authority to make such an agreement. There is uncontroverted testimony, however, to the effect that when McFadden and Kirkland had the conference with appellant in his used car lots on or about January 14, 1949, and an agreement was reached to liquidate the stock and apply the proceeds on appellant's obligation, that appellant then assured McFadden and Kirkland that he (appellant) would cooperate in every way possible and give a part of his time to help accomplish the common purpose to the end that appellee would "not lose any money on his account".

The record further reveals that most of appellant's business transactions with appellee were had with R. W. Smith, appellee's local office manager. There is nothing in the record to show that either Smith, Kirkland, McFadden or any other employee of appellee mentioned by appellant had authority to release appellant from the liability of the balance of his obligation here involved. If these agents of appellee had no actual authority to release appellant from such liability, certainly they could not bind appellee by ratifying such an unauthorized release. The record reveals that McGowan was appellee's assistant regional manager and that McBride was a mere watchman of the cars on appellant's car sales lots. Kirkland, the local branch manager, or Smith, the local office manager, could not even extend credit to a dealer such as appellant without first getting approval of appellee's home office in California and then they were required to operate within the approved limitation. Their authority was limited to procuring such finance accounts in such a manner in the Dallas area. Such authority did not by implication or otherwise give such an agent the power to release a debtor without full satisfaction of the debt. 2 C.J.S., Agency, § 118, p. 1342.

Appellant does not make clear on what grounds he bases his claim of apparent authority. It seems, however, that his claim of apparent authority is here grounded upon a course of conduct, but such is not assertable in the absence of even a single precedent act or transaction to manifest the existence of the power of authority claimed. Wewerka v. Lantron, Tex.Civ.App., 174 S.W.2d 630, and other authorities there cited. Appellant's previous transactions with appellee had been with Smith and there is no evidence given by appellant or otherwise to the effect that appellant had ever had any transaction of any nature with Kirkland prior to the time of the making of the alleged oral agreement or that either Kirkland, McFadden, Smith or any other agent of appellee ever led appellant to believe that Kirkland had authority to release appellant from the obligation in question. Assuming, however, that they had led appellant to believe such, it would then have been incumbent upon appellant to have shown further that they had authority to so act for appellee and that such act or conduct of Kirkland was done with the knowledge of some of appellee's officers or that appellee in some manner held Kirkland out to the general public and to appellant in particular as having such authority to so act. Bell v. Moody, Tex.Civ.App., 147 S.W. 2d 852; Hearn v. Hanlon-Buchanan, Inc., Tex.Civ.App., 179 S.W.2d 364; Harrison v. Life Ins. Co. of Virginia, Tex.Civ.App., 121 S.W.2d 451, 454. No such was shown by appellant in any event. The evidence heard and the circumstances in connection therewith tend to show the contrary. The last case cited laid down the following rules:

"'When an apparent authority is claimed to arise from representations or conduct, the acts and statements of the principal must be looked to for the requisite foundation and not those of the agent; the former alone can give rise to authority of this character; the latter are never in themselves sufficient

for that purpose. The principal must have affirmatively held the agent out as possessing sufficient authority to embrace the particular act in question, or else have voluntarily and in due awareness, actual or constructive, of the agent's assumption of power permitted him to act as if he had the requisite authority. The powers which the agent pretends to have, or assumes to exercise, are inoperative as a basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority * * *.' 2 C.J.S., Agency, § 96, pages 1214, 1215; Ford Motor Co. v. Maddox Motor Co., Tex.Civ.App., 3 S.W.2d 911, affirmed by Supreme Court 23 S.W.2d 333; Great American Cas. Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050; Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463."

■ An agent authorized merely to collect or to receive payment of a debt has no implied power to release the debt in whole or in part or to compromise the claim without payment in full. Southern Rock Island Plow Co. v. Wise, Tex.Civ.App., 107 S.W.2d 750; Wichita Frozen Food Lockers v. National Cash Register Co., 142 Tex. 109, 176 S.W.2d 161.

■ One who deals with an agent of a corporation must exercise proper diligence to ascertain the authority with which the agent has been clothed and cannot rely on the acts and declarations of the agent alone. Reo Motor Car Co. of Texas v. Barnes, Tex.Civ.App., 9 S.W.2d 374.

■ A careful examination of all the evidence heard does not reflect any conduct or spoken authorization given by any of appellee's officers or agents that could reasonably have led appellant to believe that Kirkland had apparent authority to release him from the balance of his original obligation, which he admitted to be correct. Neither is there any evidence even tending to show that appellee or its officers had any knowledge of the alleged release agreement at the time appellant's remaining stock of motor vehicles was liquidated and applied on his debt or at the time it accepted and gave appellant proper credit for the sum of $265 as the proceeds from the sale of the furniture and fixtures or that appellee had any knowledge of such alleged agreement until some two years or more later when appellant pleaded such as a defense to this suit. Under the record and authorities previously cited, there could have been no ratification by appellee of Kirkland's acts without knowledge of such acts. Certainly Kirkland as appellee's agent could not have ratified his own unauthorized acts for appellee. Citizens' Nat. Bank of Cameron v. Good Roads Gravel Co., Tex.Civ.App., 236 S.W. 153.

■ We are aware of the rules of law giving a jury the right to pass on controverted issues and that a jury verdict is binding if there be any evidence of probative force to support it. However, such evidence must legally have some probative force. Mere detached statements of witnesses which alone have no probative force and which do no more than possibly furnish a basis for suspicion or speculative argument are not controlling as pitted against positive unimpeached testimony to the contrary that is without suspicion, given even by interested parties. Rule 301, Vernon's Texas Rules of Civil Procedure, authorizes the trial court to render judgment non obstante veredicto if a directed verdict would have been proper. The courts have repeatedly approved such provisions of this rule and have repeatedly held that such a judgment must stand if there be no evidence of probative force upon which the jury could have made the findings relied upon.

For the reasons stated the action of the trial court in granting appellee judgment non obstante veredicto is affirmed. In support of our disposition made, we also cite

the following texts as additional authorities: 2 Tex.Jur. 486–487, Sec. 88; 2 C.J.S., Agency, §§ 50, 54, pp. 1106, 1115.

Appellee's cross assignment charging error because the trial court failed to instruct the jury that knowledge of appellee was essential to ratification in connection with the issue submitted on such has merit under the authorities previously cited together with 2 Tex.Jur. 486, Sec. 87, and other authorities there cited. However, because of the disposition made of the appeal otherwise, this question will not be further discussed. Affirmed.