## CITY NAT. BANK OF EASTLAND v. CONLEY.  (No. 9423.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 15, 1921.)

1. Appeal and error ⟨⟩1011(1)—Findings on conflicting evidence conclusive.

On conflicting evidence the trial court's findings are conclusive.

2. Principal and agent ⟨⟩147(2)—Agent's authority must be ascertained by person dealing with him.

One dealing with an agent is bound to ascertain the extent of his authority.

3. Principal and agent ⟨⟩99—Implied powers only such as are necessary to effectuate express powers.

Implied powers are such only as are necessary to carry into effect powers expressly granted.

4. Principal and agent ⟨⟩23(1)—Agent's declarations no proof of authority.

The declarations of one assuming to act as agent are not proof of his authority.

5. Bailment ⟨⟩21—Pledge ⟨⟩6—Bailee has no implied authority to pledge.

That one intrusted jewelry to another for safe-keeping does not authorize the other to pledge it, and he cannot divest the owner of ownership by pledging it, even to an innocent pledgee.

6. Principal and agent ⟨⟩166(2)—Receipt of part of proceeds of unauthorized pledge of principal's property without knowledge of pledge not ratification.

Where a man to whom a woman intrusted jewelry for safe-keeping pledged the jewelry without her knowledge, the fact that she later received from him sums constituting part of the proceeds of the pledge, without knowledge whence such sums were derived, did not amount to a ratification of the pledge, as ratification depends on knowledge of the facts.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Iva Conley against the City National Bank of Eastland. From judgment for plaintiff, defendant appeals. Affirmed.

Templiton & Milam, of Fort Worth, for appellant.

Phillips & Spoonts, of Fort Worth, for appellee.

CONNER, C. J. The appellee instituted this suit in the district court of Tarrant county against G. A. Helmuth and the City National Bank of Eastland, Tex., to recover the possession of certain articles of jewelry of the alleged value of $3,000, which the plaintiff charged belonged to her, and which she alleged had been pledged without her knowledge and consent, and without any authority from her, by the defendant Helmuth to the bank as security for a loan made by it to him, and for which he executed his note for the sum of $945. The plaintiff alleged that she had demanded possession of said property and that the bank had refused to surrender such possession to her; hence the action to recover the same.

The defendant bank pleaded: (1) A general denial. (2) That the defendant Helmuth, who had possession of the jewelry, and who was acting as the agent and representative of the plaintiff on April 23, 1918, applied to it for a loan of $900 in behalf of the plaintiff, and that he executed his personal note for $945, due six months from date, as evi-

dence of the debt, to secure which he pledged the jewelry in question. (3) That in securing the loan, and pledging the jewelry as security for its repayment, Helmuth was acting as the plaintiff's agent and representative, and that she had given him authority to do what he did; that if he was not expressly authorized to so pledge said jewelry, then that he had apparent authority to do so; that the major portion of the amount thus secured from the bank was used for the plaintiff's benefit, and that she had ratified Helmuth's action in making such pledge. (4) That the plaintiff was guilty of negligence in giving her jewelry into Helmuth's custody, and in putting it in his power to use it as he did, etc. Wherefore defendant prayed for judgment for the debt and for foreclosure of its pledgee's lien.

The trial before the court without a jury resulted in a judgment for the plaintiff for the recovery of the property, to which judgment the defendant bank duly excepted and has prosecuted an appeal to this court. As presented to us, the controlling questions are largely, if not altogether, questions of fact, which have been determined by the court below in appellee's favor.

The court filed findings of fact and conclusions of law, from which it appears that on the 20th day of April, 1918, Iva Conley owned and had in her possession the jewelry as described in her petition, and for the recovery of which she instituted her suit, and that she delivered the same to the defendant G. A. Helmuth "for safe-keeping." The court further found that on the 23d day of April thereafter, the defendant Helmuth borrowed from the defendant bank $900, and therefor executed his note in that sum, payable six months after date, and to secure which he pledged the jewelry in question. The court further found that at the time Helmuth represented to the officer of the bank, from whom he secured the loan, that Iva Conley was in jail and needed some money, and that he was borrowing it for her; that the jewelry in question belonged to her, and that she wanted to secure the payment of said note with her property, which statements were believed by the officer of the bank and relied upon. But the court further found that Iva Conley did not authorize the defendant to pledge the jewelry as was done, nor authorize him to borrow money for her, and that she, in fact, did not know that the property had been pledged to the bank as security until long after the note had matured, and did not at any time agree for the property to be so pledged. The court further found that the officer of the bank making the loan knew Iva Conley and defendant Helmuth personally, knew that they were not married, knew that Iva Conley was keeping a rooming house, and knew that their relations were very intimate. The court further found that the defendant

Helmuth deposited the $900 so secured to his own credit, and thereafter drew the same out on his personal checks, and that he voluntarily used a portion of the said money to pay the bills of the plaintiff, but that she did not know at said time that her jewelry had been pledged to secure said money; that no demand had ever been made on Iva Conley by the bank for the payment of the note, nor had the bank ever said anything to her about the note or the property held as security until she went to the bank nearly a year thereafter and demanded her property. The court further found that at the time Iva Conley delivered the jewelry to defendant Helmuth she was in jail, under a judgment of conviction for keeping a disorderly house, and that while in jail defendant Helmuth gave her different sums of money, a part of which was secured by pledging her jewelry, and that he looked after a farm belonging to her and paid some of her bills, and also attended to other business matters for her, but that he did nothing for her after she learned of the pledging of her jewelry as security for the note.

The court concluded as a matter of law that it was neither within the actual or apparent scope of Helmuth's authority to pledge the jewelry as he did, and that the bank, having knowledge that the property belonged to the plaintiff, was in duty bound to ascertain the extent of the authority of Helmuth, and not having done so advanced the money as it did at its peril.

[1] A number of material findings are attacked as unsupported by the evidence, but we cannot so say. The testimony of Iva Conley, on the one hand, and of G. A. Helmuth, on the other, as to the extent of his authority, was in direct conflict, in which state of the evidence, of course, the findings are conclusive here. Iva Conley testified, substantially, that she was the owner of the jewelry in question; that at the time of her incarceration she delivered it to Helmuth, who was her friend, for safe-keeping, and at no time gave him authority to pledge or otherwise dispose of the same; that while Helmuth from time to time advanced her small sums of money, and may have paid some of her debts while she was in jail, he did so voluntarily and not as her agent; that she was without knowledge of the loan secured by Helmuth, or of the hypothecation of her jewelry, for nearly a year after it had been done.

[2-5] While Helmuth's testimony supported the defense of the bank, yet, under the plaintiff's testimony and the findings of the court, we think the trial court's conclusions of law must be upheld. There can be no doubt of the general proposition that one dealing with an agent is bound to ascertain the extent of his authority, and this case is not one in which we think it can be said that

Helmuth had any implied authority to pledge the plaintiff's jewelry. In their very nature implied powers are such only as are necessary to carry into effect powers expressly granted, and which must therefore be presumed to have been within the intention of the principal. There may be an apparent power, but we fail to see how there can be an implied power, when no authority whatever has been vested in the individual whose wrongful act is under consideration. No evidence of authority from Iva Conley was exhibited to the bank giving authority to Helmuth to pledge the jewelry. The officer of the bank, knowing the parties, and knowing of their intimate relations, may have trusted Helmuth's statements to that effect; but Helmuth's declarations were not proof of his authority, and the bank trusted him at its peril. It cannot be said that, because Iva Conley intrusted the jewelry for safe-keeping, he was thereby clothed with authority to dispose of it. Such deposit amounted to a mere bailment of the jewelry. In 3 R. C. L., under title of "Bailments," § 2, one of the definitions given for "bailment" is:

"The delivery of personal property by one person to another in trust for a specific purpose, with a contract, expressed or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."

In such cases the bailee of personal and movable property is clothed with an evidence of ownership, to wit, possession. But' such evidence of ownership and such possession do not give the bailee authority to dispose of the property contrary to the terms of the bailment. This might be shown by many authorities, but we think it sufficient to say that, while the bailee would have implied authority to do all things necessary to the due care and preservation of the property intrusted to him, he cannot divest the bailor of his ownership by sale or pledge to another, even though to an innocent purchaser or pledgee for value. See 3 R. C. L., title "Bailment," §§ 35, 36, and 66. In the section last cited the author states, with citation of numerous authorities, that:

"The sale, exchange, pledge, mortgage, or other transfer of property by a bailee in possession thereof, though to an innocent purchaser, does not divest the title of the bailor, but in such a case it seems that he may replevy it from the vendee or transferee, or may sue in trespass, or trover, in which case it would seem that a demand is unnecessary. The rule that where one of two innocent persons must suffer, the loss should fall on him whose act or omission made the loss possible is inapplicable to bailments, as in the everyday transactions of life men are under the necessity of intrusting the possession of goods to servants and bailees for various purposes, and the owner does not in such case lose his property by a breach of trust in the mandatory, where there is no sale in market overt, but the doctrine of caveat emptor, as to any title the purchaser may acquire, applies."

[6] Nor do we think the findings or evidence show such ratification of the acts of Helmuth as to require a judgment in favor of the bank. It is true, as appellant insists, that Helmuth at the time professed to secure the loan for appellee's benefit, and later, in fact, seems to have applied part of the moneys to the payment of some of her indebtedness; but the court found, and there was evidence tending to support the findings, that Iva Conley had no knowledge whatever of Helmuth's declarations or acts in securing the loan until long afterwards, and she further testified that she had no knowledge that any money supplied by Helmuth to her or in the payment of her indebtedness had been secured by the loan from the bank. She testified that from time to time while in jail, and before, Helmuth gave her small sums of money, but that they were given voluntarily, without any promise of repayment on her part, and the court doubtless assumed, as the plaintiff had the right to infer, that Helmuth so favored Iva Conley through motives of friendship or for favors bestowed upon him.

Under such circumstances, we do not think ratification of Helmuth's unauthorized acts can be predicated upon the mere fact that some of the moneys secured was applied to the benefit of Iva Conley. Ratification of an unauthorized act has often been declared, where it appeared that a person with full knowledge thereafter received the benefit of the unauthorized act, or where a person interposes as a defense a contract made by an unauthorized person for his benefit, or where such contract is made the basis of any affirmative relief. In all cases the authorities hold that persons so receiving benefit, or so relying upon a contract, must accept the liabilities imposed by fraudulent representations or otherwise, by the acts of the unauthorized agent. But here it is certain that a material part of the loan has been appropriated to the use and benefit of Helmuth, and, if Iva Conley's testimony is to be believed, it is likewise certain that at the time of receiving the benefits referred to she was without knowledge of any of the unauthorized acts of Helmuth, and there is nothing in the record to indicate that at the time of the trial she was possessed of any of the proceeds of the loan.

We therefore conclude that the judgment below cannot be disturbed on any ground urged on behalf of the appellant, and the judgment should be affirmed.