**BRIGHTWELL et al. v. NORRIS et al.**

No. 2980.

Court of Civil Appeals of Texas. Waco.

July 21, 1951.

Rehearing Denied Sept. 20, 1951.

mediately following the description of the land covered in each lease was this typewritten clause: "As further consideration for this lease, lessee agrees to begin actual drilling operations by July 15, 1949 in the block of acreage of which this lease is a part, or this lease shall be null and void." H. A. Wysong assigned each lease to W. J. Brightwell. Appellees sought cancellation of the leases upon the ground, among others, that drilling operations were not begun by July 15, 1949 in the block of acreage of which each lease was a part.

The case was tried before a jury. Upon the conclusion of the evidence all parties presented motions for a peremptory instruction. These motions were overruled and the case was submitted to the jury on two special issues. In response to the issues submitted the jury found (1) that there was an agreement between Wysong and appellees at the time the leases were signed as to what leases constituted the block of acreage on which a well was to be drilled by July 15, 1949 and (2) that the well was not drilled on the block as agreed upon by the parties. Thereupon the court rendered judgment cancelling the leases and decreeing each to be null and void.

Under the several points in their brief appellants say the court below erred in refusing to instruct the jury to return a verdict in their favor and, in overruling their motion for judgment non obstante veredicto because the agreement of lessee to begin drilling operations by July 15, 1949 "in the block of acreage of which this lease is a part" was and is too indefinite and uncertain "to constitute a valid contract, but is void for uncertainty"; because the evidence in the case shows there was no definite understanding between lessors and lessee at the time the leases were executed as to the specific block of acreage of which each lease was to be a part and consequently they insist that such agreement was void for uncertainty and for a lack of mutuality; and because appellees, by accepting the annual rentals deposited in March of 1950 to their credit in the depository specified in each lease, waived any right they might have had to cancel the leases and each thereby became

Dodson & Reagan, Marlin, for appellants.

Bartlett & Bartlett, Marlin, for appellees.

HALE, Justice.

This suit was brought to cancel six oil, gas and mineral leases, all being identical in form, except for the names of the lessors, dates, depository for rentals, amount of rentals, acknowledgments and description of the land covered in each, the printed form of each lease being designated as "Producers' 88 Revised—Texas Standard." Appellees, J. D. Norris and wife and five of their neighbors, A. R. Hahn, J. D. Wright, Sybil Hudson, Claud Luker and J. F. Walter, were owners and lessors, respectively, of the six tracts of land covered in the leases, and H. A. Wysong was lessee in each lease. Five of the leases were dated March 25, 1949 and the sixth was dated March 30, 1949. Im-

estopped from claiming that the leases were invalid on the ground herein asserted.

■ The undisputed evidence shows that each lease in controversy was prepared by H. A. Wysong. He and his associates had been operating in the general vicinity of Lott, Texas, for some time prior to March 25, 1949. They had drilled two wells without the discovery of oil or gas. In August of 1948 Ed Good had executed an oil, gas and mineral lease to Wysong and others as lessees, covering 173 acres of land in the vicinity of Lott but this lease did not obligate the lessees to drill on the leased premises or elsewhere. After March 30, and before July 15 of 1949, Wysong began drilling operations on the Good lease and completed a dry hole. The testimony on behalf of appellants tends to show that the Good lease was a part of the block acreage in which the lessee agreed to begin drilling by July 15, 1949, as affirmatively alleged by appellants, within the contemplation of the parties to the six lease agreements here in controversy, while the testimony on behalf of appellees tends to show the contrary. Although the block of acreage in which Wysong obligated himself to drill a well was not described or defined in the written lease agreements prepared by him, we think the evidence as a whole was sufficient to sustain the findings of the jury with respect thereto.

Furthermore, after due consideration of the entire record, we have concluded that the trial court did not err in refusing to instruct a verdict for appellants or in overruling their motion for judgment non obstante veredicto, even though the agreement of lessee to begin drilling operations by July 15, 1949 "in the block of acreage of which this lease is a part" be regarded as void for uncertainty or for a lack of mutuality.

The first numbered paragraph in each lease agreement provides that "lessor in consideration of One & 00/100 Dollars ($1.00), in hand paid, of the royalties herein provided, and of the agreement of lessee herein contained, hereby grants, leases and lets," for the purposes therein set forth, the land described therein by metes and bounds, with the additional proviso that lessee agrees, as further consideration for the lease, to begin actual drilling operations by July 15, 1949 "in the block of acreage of which this lease is a part, or this lease shall be null and void." Paragraph 5 in each lease provides in substance that if operations for drilling are not commenced on the particular tract of land described by metes and bounds in the lease within one year from the date thereof the lease shall terminate unless the lessee shall pay or deposit to the credit of lessor in the depository therein named a sum of money equal to one dollar per acre on the total number of acres covered in the lease, such payment or deposit to confer upon lessee the privilege of deferring commencement of drilling operations on that particular tract of land for an additional period of twelve months, and that in like manner drilling operations may be deferred for successive periods of twelve months for a total period of ten years.

■ It is quite clear from all the evidence in the case that the unconditional promise on the part of lessee to begin actual drilling operations by July 15, 1949, in the block of acreage of which each lease was to be a part constituted the inducing consideration which caused each of the lessors to sign and deliver the lease agreements in controversy. Lessors wanted a well to be drilled in the immediate vicinity of their lands and each testified without dispute that but for the promise of lessee to drill such well as contained in the lease agreements they would not have signed the same. H. A. Wysong testified in effect that he knew the lessors were relying upon his unconditional promise to begin drilling operations by July 15, 1949, in the block of acreage of which each lease was to be a part and that he placed such promise in each lease for the purpose of inducing each lessor to sign and deliver the same to him. Hence, it appears to us that such written promise must be regarded under the circumstances of this case as an inseparable part of each lease agreement in its entirety and as an indispensable element

in the agreed consideration for the execution of each lease.

In the case of Raywood Rice Canal & Milling Co. v. Erp, 146 S.W. 155, 159, the Supreme Court of this State quoted with approval from Bishop on Contracts as follows: "A contract illegal in part and legal as to the residue is void as to all, when the parts cannot be separated; when they can be, the good will stand and the rest fall." See also: Redgrave v. Wilkinson, Tex.Civ.App., 208 S.W. 2d 150, pt. 3, er. ref. n. r. e. and authorities, recently decided by this court. The rule thus announced seems to be fair and just in its application to the facts of this case. The unequivocal promise of the lessee to drill a well by July 15, 1949, in the immediate vicinity of the land embraced in the six leases in controversy went to the root of each lease agreement and was of the very essence of each. Consequently, if such promise was breached or if for any reason it was unenforceable or void, then in our opinion each of the leases containing such promise, as expressly provided therein, became null, void and unenforceable in its entirety, so as to entitle appellees in equity to a cancellation or rescission of each. 31A Tex.Jur. p. 360, Sec. 199 and authorities; Powers v. Sunylan Co., Tex.Com.App., 25 S.W.2d 808, pts. 2–4 and authorities; Jumonville Pipe & Machinery Co. v. Haslam Lumber Co., Tex.Civ.App., 129 S.W.2d 386, pt. 3; Jackson v. National Life & Accident Ins. Co., Tex.Civ.App., 161 S.W.2d 536, pt. 4, er. ref.

Appellants insist that the case of Mitchell v. Simms, Tex.Com.App., 63 S.W.2d 371, sustains their contention with respect to waiver and estoppel in this case, but we do not think so. The Mitchell case involved only an "unless" lease in so far as the payment of rentals for the purpose of deferring drilling operations was concerned, whereas in the case now before us it appears that the unconditional agreement of the lessee to begin actual drilling operations in the block of acreage therein contemplated by the parties by July 15, 1949 was intended as a condition precedent to the continuing validity of the lease or the right, if any, of the lessee or his assigns to defer drilling operations for a period of 10 years by the payment of the annual rentals therein specified. Moreover, in the instant case each lessor testified in effect that he did not know at the time he accepted the deposit which had been made to his credit in March of 1950 as annual rental that Wysong had defaulted in his agreement to drill a well in the block of acreage of which each lease was a part, and that he did not learn the true facts with reference to the Good lease until sometime during the latter part of 1950, when he immediately joined the other lessors in the institution of this suit and tendered the amount so deposited to his credit as an annual rental into the registry of the court for the use and benefit of appellants.

Waiver is generally said to be the intentional relinquishment of a known right or such conduct as to warrant an inference to that effect. 43 T.J. p. 891, Sec. 2 and authorities. In our opinon, when the lessee failed to begin actual drilling operations by July 15, 1949, as he had expressly agreed in each lease to do, each lease automatically terminated and ceased immediately to have any further legal force or binding effect upon the parties thereto. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27, pt. 8. Furthermore, from the evidence in the record, we cannot say as a matter of law that appellees, or any of them, knew at the time when they accepted the amount of money deposited to their credit as annual rentals under the lease agreements, the facts which caused such agreements to terminate automatically on July 15, 1949, or that they intended by such acceptance to relinquish their rights thereafter to assert the invalidity of such lease agreements.

Because we are of the opinion that the trial court did not err in refusing to instruct a verdict for appellants or in overruling their motion for judgment non obstante veredicto, all of the points of appellants are overruled and the judgment appealed from is affirmed.