**WELLS FARGO BUSINESS CREDIT,**
**Plaintiff-Appellant,**

v.

**BEN KOZLOFF, INC.,**
**Defendant-Appellee.**

No. 81–1452.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1983.

Rehearing and Rehearing En Banc
Denied Feb. 18, 1983.

George F. McElreath, Vernon O. Teofan, Dallas, Tex., for plaintiff-appellant.

R.J. True, Jerry T. Steed, Dallas, Tex., for defendant-appellee.

Before BROWN, RUBIN and REAVLEY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Wells Fargo Business Credit (Wells Fargo), a commercial lending institution, brought suit to recover payment of amounts wrongfully offset in breach of a no-offset agreement with Ben Kozloff, Inc. (Kozloff), for the accounts of Williamson Companies, Inc. (Williamson). Because we find that Greg Williamson was not an agent for Wells Fargo to receive a rescission of the no-offset agreement and that Wells Fargo did not waive the agreement, we reverse.

### Fish Story

Williamson and defendant Kozloff were both frozen seafood broker-wholesalers. Williamson bought seafood from and sold seafood to Kozloff. Ben Kozloff is the president of Kozloff. Greg Williamson is the vice-president and secretary of Williamson.

In May of 1979, Wells Fargo began to finance the business of Williamson against the security of, among other things, Williamson's accounts receivable. Not all of the accounts were considered eligible, however, for the purpose of computing the amount of the cash advance that would be available to Williamson at any given time. Among the accounts considered ineligible were "contra accounts", consisting of those accounts with business concerns to which Williamson not only sold but also purchased seafood. Such accounts would not be considered eligible accounts against which an advance could be made unless Williamson obtained and submitted to Wells Fargo a no-offset agreement from the contra account.

Greg Williamson telephoned Ben Kozloff and secured his promise to sign such an agreement on behalf of Kozloff and return it to Williamson. The record indicates that this promise was made and fulfilled in a letter dated May 8, 1979, by Ben Kozloff "in a weak moment" as a favor to Greg Williamson. The Kozloff no-offset agreement was delivered to Wells Fargo by Greg Williamson and Wells Fargo thereafter made advances to Williamson against the Kozloff accounts.

Soon thereafter, Kozloff apparently reconsidered its participation in the no-offset agreement. As the result, Kozloff claimed to have sent Greg Williamson a letter dated May 25, 1979 in which it advised Wells Fargo that it would offset accounts receivable arising out of Williamson's indebtedness to Kozloff. The May 25 letter was introduced as evidence at trial.

On or about June 13, 1979, Kozloff tendered a check to Williamson with a typewritten notation on the back indicating that the check was in full payment of certain numbered invoices. Williamson endorsed the check and remitted it in kind to Wells Fargo where it was processed and deposited. The check voucher attached to the June 13, 1979 check shows a credit against the amounts due Williamson in the amount of $114,918.75. This credit was actually an offset of the $114,918.75 due Kozloff from Williamson. Greg Williamson had previously telexed Kozloff to authorize the offset of this amount. Wells Fargo was not aware that Greg Williamson had authorized the June offset or that an offset had occurred prior to January of 1980.

No further offsets of account occurred until December 28, 1979, when Kozloff offset the sum of $285,597.40 against an account due Williamson of $315,647.60. The December 28, 1979 checks were handed over directly to an officer of Wells Fargo by Greg Williamson who informed the officer of the offsets. Collateral and collection reports were received by Wells Fargo on January 3, 1980, accompanied by invoices, check vouchers and other checks received that day. Wells Fargo negotiated the Kozloff checks and made demand upon Kozloff for payment of the amount that had been wrongfully offset in breach of the May 8 agreement.

Wells Fargo filed suit to recover amounts wrongfully offset and a jury trial was held. Special issues were submitted to the jury.[1] It found all issues in favor of Kozloff and judgment on the verdict was entered. Wells Fargo appeals.

### Wells Fargo's Appeal: Real or Just Red Herrings?

Wells Fargo serves up four issues on appeal. It argues first that there is no evidence in the record to sustain the jury's finding that the Kozloff letter dated May 25, 1979 (rescinding the no-offset agreement) was received on or before November 6, 1979.[2] Wells Fargo argues second that Greg Williamson was not an agent of Wells Fargo when he received the Kozloff letter dated May 25, 1979, if he received it at all. Thus, it argues that knowledge of the rescission letter cannot be imputed by Wells Fargo. Third, Wells Fargo contends that Kozloff did not prove that it waived its rights in the May 8, 1979 letter (no-offset agreement). Finally, it argues that the district court abused its discretion by denying its motion for new trial on the grounds that it was deprived of probity by the court's denying Wells Fargo an opportunity on voir dire to develop information concerning the jury foreman's possible criminal involvement in a wholly unrelated event.

### A. The One That Got Away

▉ Wells Fargo raises two points regarding the receipt of a letter dated May 25, 1979 purporting to rescind the no-offset agreement. It asserts error in the district

---

1. Question No. 1: Did Kozloff prove that on or before November 6, 1979, Greg Williamson received the Ben Kozloff, Inc. letter dated May 25, 1979?
 Answer: Kozloff did prove.
 Question No. 2: Did Kozloff prove that Greg Williamson was acting as the agent of Wells Fargo when he received the May 25, 1979, letter?
 Answer: Kozloff did prove.
 Question No. 3: Did Kozloff prove that Wells Fargo waived its rights in the May 8, 1979, letter?

Answer: Kozloff did prove.

2. It is unclear from the record in this case why the November 6, 1979 date was chosen. Defendant's requested special issues did not include a reference to the date and the documentary evidence fails to reveal the source of the reference. One collateral report received on November 6 and recording accounts reported as of that date was introduced as Plaintiff's Exhibit 19. We can find no further explanation for the reference.

court's failure to grant j.n.o.v. because the evidence was insufficient to support the jury verdict that Greg Williamson received the rescission letter, and second, in its failure to grant a motion for new trial because the verdict was against the great weight and preponderance of the evidence. Though the standards of review for each differ,[3] on neither basis do we find adequate reason to overturn the district court's decision.

■ A letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of the mail. *Southland Life Insurance Co. v. Greenwade,* 159 S.W.2d 854 (Tex.1942). Thus, the question here becomes whether or not Kozloff mailed the May 25 letter to Williamson. If such evidence is presented and not rebutted, then it may be presumed that Williamson received the rescission letter.

■ Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business. *Cooper v. Hall,* 489 S.W.2d 409 (Tex.Civ.App.1972). Testimony in the record indicates that Ben Kozloff saw the May 25 rescission letter in the envelope and saw the envelope sealed. Second, Ben Kozloff testified that the procedure used in mailing the May 25 rescission letter to Greg Williamson was the same as that used in sending the May 8, 1979 no-offset agreement. Finally, Ben Kozloff testified that he had never received a return of the May 25 letter indicating that postal authorities were unable to deliver it. Accordingly, we hold that there was sufficient evidence to create a presumption that the May 25 rescission letter was received by Williamson in the due course of the mail. Thus, the

burden of producing evidence of non-delivery shifted to Williamson and Wells Fargo.

There is no evidence in the record that would indicate that Williamson did not receive the May 25 letter. On May 31, 1979, six days after the May 25 rescission letter, Williamson authorized Kozloff to offset the Williamson accounts. This testimony, combined with the evidence concerning the offset notations on the voucher and on the back of the check tendered to Williamson on June 13, 1979, at least raised the inference that Williamson received the May 25 letter. On this basis, we hold that there is sufficient evidence to sustain the jury's finding that Williamson in fact received the May 25 rescission letter from Kozloff.

### B. *Big Fish, Little Fish*

Wells Fargo's second argument concerns the trial court's determination that Greg Williamson was the agent of Wells Fargo when he received the Kozloff letter of May 25, 1979. From our examination of the record, we hold that under no theory of agency can Greg Williamson be held to be an agent of Wells Fargo.

■ A party may be held responsible for the acts of its purported agent under three agency theories. The first requires that the principal have endowed its agent with actual authority, express or implied, to carry out its wishes. To create an agency relationship based on actual authority, such authority must have been delegated to the agent either by words that expressly or directly authorize him to do a delegable act, or such authority may be implied from the facts and circumstances attending the transaction in question. Implied authority may arise either independent of any express

---

3. Review of a district court's denial of a motion for j.n.o.v. is severely limited. The standard for review, like that for granting the motion, requires that the court review all of the evidence in the light most favorable to the opponent of the motion. If the court then finds that the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict, the motion should be granted. *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969).

Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, j.n.o.v. should not be awarded. *Powell v. Lititz Mutual Insurance Co.,* 419 F.2d 62 (5th Cir.1969).

Review of motions for new trial are likewise limited and ordinarily the district court's judgment may be overturned only when there is a clear showing of abuse of discretion. *Bunch v. Walter,* 673 F.2d 127, 130–31 (5th Cir.1982).

grant of authority, as from some manifestation by the principal that the particular authority in question shall exist in the agent, or it may arise as a necessary or reasonable implication required to effectuate some other authority expressly conferred by the principal. *See* 2 Tex.Jur.2d Agency § 36; 3 Am.Jur.2d Agency § 86. Measured by these standards, we find that Wells Fargo endowed Greg Williamson with no actual authority as its agent.

■ Wells Fargo presented evidence that it in no way insisted that Greg Williamson obtain the no-offset agreement from Kozloff or from any other contra account. Wells Fargo made it clear that it would continue to finance the business of Williamson against the security of Williamson's accounts receivable. The no-offset agreements were necessary only if Williamson wanted to increase its cash availability by including contra accounts. This required a no-offset agreement. Wells Fargo's sole requirement was that Williamson use a form acceptable to it if Williamson chose to obtain and obtain the benefit of a no-offset agreement. There is no evidence in the record available to this court that Wells Fargo had or reserved the right to direct Williamson to obtain such agreement. Indeed, the financing agreement was clear: contra accounts would not qualify; if the borrower wanted contra accounts included, the borrower had to obtain a no-offset agreement in a form acceptable to Wells Fargo. The initiative was on Williamson. If it furnished the no-offset agreement for contra accounts, the invoices would be eligible. If not, they would not be. Wells Fargo was thus a mere recipient. We, therefore, see no words or manifestation of any grant of authority to Williamson to act on behalf of Wells Fargo in obtaining the no-offset agreement.

This conclusion is supported by Greg Williamson's apparent understanding of his arrangement with Wells Fargo. Greg Williamson testified that he continued to operate his business as he saw fit even after he had entered into the security agreement with Wells Fargo. We hold that Greg Williamson could not have been the agent of Wells Fargo under this theory of agency.

■ The second method by which a third party can become bound by the acts of its agent is that based on apparent authority. Apparent authority arises when the principal, either intentionally or by lack of ordinary care, induces third persons to believe an individual is his agent even though no actual authority, express or implied, has been granted to such individual. *Lloyds Casualty Insurer v. Farrar,* 167 S.W.2d 221 (Tex.Civ.App.1942). To hold the principal liable under this agency theory, a party must establish that it has been induced to act in good faith upon certain representations made to it by the principal. *Minneapolis-Moline Co. v. Purser,* 361 S.W.2d 239 (Tex.Civ.App.1962); *see also Chapapas v. Delhi-Taylor Oil Corp.,* 323 S.W.2d 64 (Tex. Civ.App.1959); *Bluebonnet Oil and Gas Co. v. Panuco Oil Leases, Inc.,* 323 S.W.2d 334 (Tex.Civ.App.1959). Such representations must point unmistakably to an agency relation; the doctrine cannot be invoked if the principal's conduct is of such a character that it would be unreasonable to conclude that he intended to be bound. *Owens v. Hughes,* 71 S.W. 783 (Tex.Civ.App.1903); *City National Bank v. Conley,* 228 S.W. 972 (Tex.Civ.App.1921).

■ The second, decisive element that must be shown to establish apparent authority is reliance by the party claiming it on the facts and circumstances which give rise to the agent's apparent powers. To hold a principal liable under the doctrine of apparent authority, a party must show that, when dealing with the supposed agent, he has relied on the agent's authority in good faith, in the exercise of reasonable prudence. *Butterworth v. France,* 66 S.W.2d 369 (Tex.Civ.App.1933); *Hearn v. Hanlon-Buchanan, Inc.,* 179 S.W.2d 364 (Tex.Civ. App.1944); *Bankers' Protection Life Insurance Co. v. Addison,* 237 S.W.2d 694 (Tex. Civ.App.1951).

■ Kozloff alleges that Wells Fargo's express action in requiring Greg Williamson to solicit and obtain on its behalf

the no-offset agreement created an agency relationship. Kozloff submits that these actions so clothed Greg Williamson with authority that a reasonably prudent person would have believed that he had authority to receive a subsequent revocation of the no-offset letter. In the preceding discussion, we held that the actions of Wells Fargo in no way constituted a granting of authority to Williamson to act as its agent. Furthermore, Wells Fargo had no communications at all with Kozloff. There is no evidence that Kozloff knew of any actions by Wells Fargo on which it could rely. Therefore, there was and could be no reliance.

The record fully supports this holding. It indicates that Kozloff executed the no-offset agreement as a favor to Greg Williamson. Thus, we find no reliance in the record which would bind Wells Fargo under a theory of apparent authority. We do so cognizant of the fact that apparent authority is determined by the acts and conduct of the *principal* and *not* by the acts of the alleged agent. *Hearn,* 179 S.W.2d at 368; *Bolin v. Pacific Finance Corp.,* 278 S.W.2d 879 (Tex. Civ.App.1954).

The third theory under which a principal may be bound by the acts of its purported agent is one based on estoppel. A party basing its claim upon the rules of estoppel must show not only reliance, which is required when the claim is based on apparent authority, but also a change of position such that it would be unjust for the speaker to deny the truth of his words. As discussed above, there being no affirmative act on the part of Wells Fargo to induce

Kozloff into believing Williamson was its agent, there was no such reliance. Yet even where a purported principal has not affirmatively misled the third party but has merely carelessly failed to take affirmative steps to deny that another was his agent, there would still be no reliance and hence, no liability. In this instance, "the imposition of liability [on such a party] is so extraordinary that it is doubtful whether he should be made liable to a third person who has made a contract with the pretended agent but has not otherwise changed his position." Restatement (Second) of Agency, § 8, Comment d. (1958).

We also find no indication in the record that Kozloff changed its position in reliance upon Wells Fargo's intentionally or carelessly causing it to believe that Greg Williamson was an agent for Wells Fargo or that it failed to take reasonable steps to notify Kozloff of the facts knowing of such belief and that others might change their position because of it. *See* Restatement (Second) of Agency § 8B.[4] Even concluding that there was a change of position on Kozloff's part, since we have held that it was not due to Wells Fargo's conduct, we hold that Wells Fargo cannot be bound as a principal under the doctrine of estoppel.

Having failed to find any means by which Wells Fargo could be held liable as a principal under any theory of agency, we hold the jury's finding that Williamson was an agent for Wells Fargo is not supported by the evidence and, therefore, that the district court erred in not granting j.n.o.v. with respect to that issue.

\* \* \* \* \* \*

**4.** Section 8B provides for the imposition of liability on:

(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

(a) he intentionally or carelessly caused such belief, or

(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.

(3) Change of position, as the phrase is used in the restatement of this subject, indicates payment of money, expenditure of labor, suffering a loss or subjection to legal liability.

Though there is some hint in the testimony of Ben Kozloff regarding his telephone conversation with Greg Williamson of May 31 that he (Kozloff) would not have dealt with Williamson had Greg Williamson not allowed the accounts to be offset, this was not based in any way on actions by Wells Fargo. Thus, there could be no estoppel.

## C. *Don't Make Waives*

Since it may be theoretically possible, but not likely, that Kozloff could prevail notwithstanding our holding on Greg Williamson's lack of agency (*see* Issue No. 2, note 1, *supra*), we think it advisable, if not necessary, that we discuss Wells Fargo's third contention that it did not waive its rights to the no-offset agreement. Kozloff argued, and the jury apparently believed, that by receiving and processing the June checks and vouchers, Wells Fargo had knowledge that offsets had taken place. By failing to act on this supposed knowledge, Kozloff argued that Wells Fargo waived its rights in the May 8 agreement. If Wells Fargo is correct in its contention that it had no knowledge of the June offsets and, therefore, did not, by inaction in the face of such knowledge, waive its no-offset agreement, then the jury's finding of waiver (Issue No. 3, note 1 *supra*) is supported by insufficient evidence, requiring j.n.o.v. as to that issue. For the reasons stated below, we so hold.

 Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396 (Tex.1967); *Brightwell v. Norris,* 242 S.W.2d 201 (Tex.Civ.App.1951); *Butler v. Employers Casualty Co.,* 241 S.W.2d 964 (Tex.Civ.App.1951); *See* cases cited at 60 Tex.Jur.2d Waiver § 1, n. 1. There can be no waiver of a right if a person sought to be charged with waiver says or does nothing inconsistent with the intention to rely on that right. *Maryland Casualty Co. v. Palestine Fashions, Inc.,* 402 S.W.2d 883 (Tex.1966); *Stowers v. Harper,* 376 S.W.2d 34 (Tex.Civ.App.1964); *Ryan v. Winegardner,* 348 S.W.2d 284 (Tex.Civ.App.1961); *Ford v. Culbertson,* 308 S.W.2d 855 (Tex. 1958).

It is undisputed in the record that there was no conscious, unequivocal expression by Wells Fargo to waive the May 8 no-offset agreement. Rather, Kozloff asserts that waiver can be inferred from evidence of silence or inaction, coupled with knowledge of a known right, for such an unreasonable period of time as to indicate an intention to waive the right. *See Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210 (Tex.Civ.App. 1981).

 It should be remembered, however, that a waiver cannot be inferred from silence alone. In the absence of an express renunciation, there must be an act from which an intention to waive may be inferred or from which waiver follows as a legal result. *Equitable Life Assurance Society v. Ellis,* 137 S.W. 184 (Tex.Civ.App. 1910). A waiver will not be implied or presumed contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct, the opposing party has been misled to his prejudice into the honest belief that such waiver was intended or consented to. *Miller v. Deahl,* 239 S.W. 679 (Tex.Civ.App.1922). Thus, the two essential inquiries here are (1) whether Wells Fargo knew of the June offsets; and (2) whether by Wells Fargo's conduct, Kozloff was misled to its prejudice that Wells Fargo had intended or consented to the waiver of the May 8th no-offset agreement.

 We turn first to the question of Wells Fargo's knowledge of the June offsets. Kozloff asserts that subsequent to Greg Williamson's telex authorization on May 31, 1979, it submitted a check and voucher which offset the sum of $113,750. The voucher and check carried the notation that certain numbered invoices were paid in full and showed the offset. Greg Williamson endorsed and remitted the check and voucher to Wells Fargo where it was processed. Williamson attached the check to a daily collateral report, on a form of which was supplied by Wells Fargo. On this basis, Kozloff asserts that Wells Fargo was supplied with knowledge of material facts concerning the offset agreement. At first glance, such implied "notification" would seem sufficient to hold Wells Fargo to knowledge of the June offsets. A closer, more careful examination reveals, however, that charging Wells Fargo with knowledge of the offset on the facts here holds it to an

extreme standard of care. We refuse to hold Wells Fargo to such a high standard.

Wells Fargo does not deny that it received the check and voucher. It does contend however, that it had no direct knowledge that Kozloff had offset the Williamson account at any time prior to the offset of December 28, 1979 which triggered this lawsuit. It bases this argument on the fact that the check from Kozloff was processed in Wells Fargo's ordinary course of business, which does not include procedures to apply payments to specific invoices.

Under its established procedure, when a check is turned over to Wells Fargo by a customer, it is accompanied by a collateral report and a collection report. In this instance, Williamson also included invoices representing sales by it for the period since the last collateral report, and 11 other checks from Williamson account debtors. Such invoices are not required.

The required information is received by a collateral processor whose function it is to compare the amounts on the checks to the amounts shown on the customer's collateral report. The processor is also responsible for inspecting the checks for endorsements and for running an adding machine tape totalling the face amount of the checks received. Once this is done, the total of the receipts is checked against the figure reported by the customer at the bottom of the "Collections —Net Cash" column of the collection report. If those two figures agree, the checks are sent to the accounting department where a deposit slip is prepared and the checks are sent to the bank.

On this basis, Kozloff asserts that the collateral processors, the loan supervisors who review the daily reports and make monthly reports of accounts receivable, and the auditors who perform the 90-day audits had knowledge of the offset. Thus, because Wells Fargo made no objection to any offsets until December of 1979, Kozloff argues that Wells Fargo's silence and inaction combined with its knowledge of the June offset, justified the inference that it waived the May 8 no-offset agreement. We cannot agree.

We observe initially that the June offsets recorded were not in a form that would have enabled Wells Fargo to discover them readily. As indicated by the Appellant's Supplemental Statement of Facts at 5, had Williamson properly reported the offsets, it would have been overline on its loan to Wells Fargo by at least $72,952.62. This would have alerted Wells Fargo to the offset. Second, the actual form in which the offsets were recorded was not one which would have alerted Wells Fargo to the offsets. As discussed above, the vouchers were not required for processing by Wells Fargo. Consequently, Williamson and Kozloff had no reason to anticipate that Wells Fargo would examine the vouchers for offsets. Moreover, the offsets are listed as "deductions" and, as such, even if examined, would not reveal that they were offsets. Finally, the typewritten notation on the check was also not an item that either Williamson or Kozloff should have anticipated would be noted by the Wells Fargo processor.

To charge Wells Fargo with knowledge under these circumstances then, would be to hold it to an extreme and unreasonable standard of care. To require an organization such as Wells Fargo, a large lending institution which processes thousands upon thousands of checks each day, to examine each check, to compare each voucher against each check, and each of these against each invoice in a search for possible offsets or other violations of its financing arrangements, is to place an unreasonable burden on it. Thus, we hold that there was insufficient evidence that Wells Fargo had knowledge of the June offsets to support the jury's verdict that it waived its rights in the May 8 letter.

This determination necessarily disposes of our second inquiry here. By holding that Wells Fargo's accounting procedures did not give rise to the inference that it knew of the June offset and, therefore, intended to waive the no-offset agreement by continuing its financing arrangements with Williamson, we hold that Kozloff could not have been misled to its detriment that

Wells Fargo intended or consented to the waiver. This determination, combined with our previous holding that Kozloff did not change its position in response to any act by Wells Fargo, leads us to the conclusion that there is insufficient evidence of waiver, either express or implied, to support the jury's verdict that Wells Fargo waived its rights in the May 8, 1979 letter and, for that reason, the district court erred in not granting j.n.o.v. as to this issue.

With j.n.o.v. directed as to both agency and waiver, no basis remains in the jury verdict to sustain the judgment for Kozloff so it must fall.

### D. *Something Fishy*

As its final basis for appeal, Wells Fargo argues that the District Court abused its discretion by failing to grant a new trial on grounds that undesirable and pernicious elements were introduced to the jury. Having reversed the district court and rendered judgment for Wells Fargo, we need not pass upon the merits of its motion for a new trial on grounds of juror disqualification.

### E. *Gone Fishin'*

For the foregoing reasons, we reverse judgment below and render judgment in favor of Wells Fargo.

REVERSED AND RENDERED.

ALVIN B. RUBIN, Circuit Judge, concurring in the result and in parts of the opinion:

Assumption must be piled upon assumption beyond the height of Pelion on Ossa to justify the conclusion, reached in Part A of the majority opinion, that the Kozloff letter was received by Williamson. No one testified that the letter was mailed. Indeed, there was no testimony that it was even stamped. There was testimony that the letter was written and sealed in an envelope in the same manner as a prior letter. However, this evidence was insufficient to support the inference that someone else stamped and mailed the envelope. There was no admissible evidence of a business routine or custom that would get the letter from Kozloff's desk into the mail. In sum, there was no evidence supporting the conclusion that Williamson received the letter.

Therefore, I would not create precedent for other cases by concluding that there was, indeed, sufficient evidence to support a jury finding, or to create a presumption under Texas law, that the letter was received. *See* Fed.R.Evid. 302. Nor is there any need to discuss the question. As the majority opinion explains, Williamson was not Wells Fargo's agent and Wells Fargo did not waive its rights under the no-offset agreement. So it makes no difference whether or not Kozloff's letter was received.

Accordingly, I concur in the judgment and in the reasons for it advanced in Parts B and C of the opinion. I am dubitante about Part A and, therefore, do not join in it.