**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-31363
(Summary Calendar)

In The Matter Of: TASCH, INC.,                                      Debtor.

-----------------------------------------------------------------------------------------------------------------------

TASCH, INC.,                                                              Appellee,

versus

DIAMOND OFFSHORE DRILLING, INC.,                          Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 98-CV-3746-G)

July 31, 2002

Before JOLLY, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

* Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th CIR. R. 47.5.4.

Diamond Offshore Drilling, Inc. ("Diamond") appeals from the district court's entry of judgment in favor of Tasch, Inc. ("Tasch") on its claim for breach of contract. For the following reasons, we AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

The present controversy arises out of a contract dispute concerning painting and sandblasting services provided by Tasch. Tasch performed these services on a semi-submersible drilling rig operated and owned by Diamond. On March 5, 1997, Tasch entered into a sub-contract with Sabine Offshore Services, Inc. ("Sabine"), a corporation principally engaged in marine service activities. This contract provided that Tasch would perform painting and sandblasting services to the underside of the semi-submersible drilling rig, the *Ocean Century*, which was owned and operated by Diamond, and was docked at Sabine's facilities. On May 5, 1997, Tasch and Sabine entered into a second agreement for painting and sandblasting of the topside of the *Ocean Century*. On October 16, 1997, Diamond suspended Tasch's performance. Prior to the suspension of performance, Tasch had completed the work described in the March 5th agreement and approximately sixty-three percent of the work provided for in the May 5th agreement. Tasch received $1,449,229 for these services.

On October 20, 1997, Tasch filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana. On March 9, 1998, the bankruptcy court granted Tasch's motion to compel Sabine to turnover $53,398.98. On August 3, 1998, the bankruptcy court signed an Order of Confirmation of plaintiff's Plan of Reorganization.

Tasch filed suit alleging that Diamond breached an oral contract for additional work that became necessary because of Diamond's interference during the course of Tasch's performance on the March 5th agreement. Tasch contends that after it began work, Diamond ordered that steel

2

replacement work be done by third parties on the *Ocean Century*, and that this replacement work interfered with Tasch's performance and profitability. Tasch asserts that it made repeated complaints to Diamond personnel about this interference and resulting delays, and that Diamond orally agreed to compensate Tasch for such delays and such additional work required by the steel replacement work. Additionally, Tasch alleges that Sabine and Diamond did not pay the full amount owed under the original contract price and for agreed upon additions to the original contract.

On February 8, 1999, the district court found the present action to be a non-core proceeding otherwise related to a case under Chapter 11. In re Tasch, Inc., Nos. 97-15901 JAB & 98-1174, 1999 WL 64959, at *2 (E.D. La. Feb. 8, 1999). The matter was tried before a bankruptcy judge on November 27th and 28th, and December 5th and 6th, 2000. On April 17, 2001, the bankruptcy court submitted Proposed Findings of Fact and Conclusions of Law. It recommended that judgment be entered in favor of Tasch and against Diamond in the amount of $450,000, as a result of an oral contract between Tasch and Diamond. It also recommended judgment in favor of Tasch and against Diamond and Sabine in the amount of $95,452, the unpaid balance for work under the original contract with subsequent modifications. The defendants submitted objections to the proposed findings. Tasch requested that judgment be entered in accordance with the recommendation. The district court adopted the bankruptcy court's Proposed Findings of Fact and Conclusions of Law and entered judgment in favor of Tasch and against Diamond in the amount of $450,000, together with prejudgment interest from October 21, 1998 to the date of entry of the judgment, post-judgment interest at the federal legal rate, and costs. It further ordered that judgment be entered in favor of Tasch and against defendants Diamond and Sabine in the amount of $95,452, *in solido*, together with

3

pre-judgment interest from October 21, 1998 to the date of entry of the judgment, prejudgment interest at the federal legal rate, and costs. Diamond appeals.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact under a "clearly erroneous" standard. FED. R. CIV. P. 52(a); In re United States Abatement Corp., 79 F.3d 393, 397 (5th Cir. 1996). "If a finding is not supported by substantial evidence, it will be found to be clearly erroneous." 9A ALAN WRIGHT & ARTHUR R. MILLER, 9A FEDERAL PRACTICE & PROCEDURE, § 2585 (1995). When the district court has affirmed the bankruptcy court's findings, the review for clear error is strict. Traina v. Whitney Nat'l Bank, 109 F.3d 244, 246 (5th Cir. 1997). We review mixed questions of law and fact, as well as pure questions of law, *de novo*. In re Bass, 171 F.3d 1016, 1021 (5th Cir. 1999).

## APPLICABLE LAW

Any contract for the repair of a vessel is a maritime contract, and therefore is governed by maritime law. Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 412 (5th Cir. 1982). A "vessel" is defined as a structure designed or utilized for "transportation of passengers, cargo or equipment from place to place across navigable waters." Manuel v. P.A.W. Drilling & Well Serv., Inc., 135 F.3d 344, 347 (5th Cir. 1998). Courts have held that, for the purposes of maritime law, a submersible oil drilling rig is a vessel. Id. at 348 (citing cases where a variety of special purpose structures were held to be vessels for the purpose of maritime law). Because the *Ocean Century*, a semi-submersible drilling rig, is a vessel, any contracts for work on the *Ocean Century* must be construed in accordance with general maritime law.

"[G]eneral maritime law, where not previously developed, is determined by judicial analysis of congressional enactments in the field of maritime law, relevant state legislation and state common

4

law." Williams v. Carnival Cruise Lines, Inc., 907 F. Supp. 403, 405 (S.D. Fla. 1995) (citing Miles v. Apex Marine Corp., 498 U.S. 19, 27 (1990)).  "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."  E. River S.S. Corp. v. Transam. Delaval, Inc., 476 U.S. 858, 864-65 (1986).  The Supreme Court has recognized that maritime law, in the absence of a statute, is "developed by the judiciary."  Id. at 864.

In maritime contract disputes, federal courts apply general principles of contract law.  1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5-1 (2d ed. 1994) (citing Har-Win, Inc. v. Consolidated Grain & Barge Co., 794 F.2d 985 (5th Cir. 1986)).  However, to the extent that it is not inconsistent with admiralty principles, state contract law may be applicable to maritime contracts.  Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 459 (5th Cir. 1995).

DISCUSSION

On appeal, Diamond asserts six points of error.  It maintains that: (1) the district court's conclusion that an oral contract existed between Diamond and Tasch was clearly erroneous because there was insufficient evidence of the contract's terms, (2) the district court's conclusion that a principal-agent relationship existed between Diamond and Sabine was clearly erroneous, (3) the district court's finding regarding estoppel was erroneous, (4) the district court erred in its finding that Diamond interfered with or delayed Tasch's performance of the contract, (5) Diamond failed to comply with pretrial disclosure deadlines for testifying experts, and (6) the district court's conclusion regarding damages was clearly erroneous.

# I. Existence of an Oral Contract

Diamond argues that the district court erred in finding that an oral contract existed because no contract can exist when the consideration is not defined. It asserts that there was no testimony regarding what compensation Diamond would give to Tasch for its services. Diamond also asserts, relying heavily on <u>Austin Elcon Corp. v. Avco Corp.</u>, 590 F. Supp. 507 (W.D. Tex. 1984), that the agreements provided that any alterations must be in writing and, therefore, any requests for additional work or promises to compensate, needed to be in writing to be enforceable.

Courts have consistently held that maritime law generally regards oral contracts as valid. <u>See, e.g.,</u> <u>Kossick v. United Fruit Co.</u>, 365 U.S. 731, 734 (1961). It is well settled that a plaintiff suing on a contract, whether written or oral, is required to establish the basic elements of a contract, i.e., offer, acceptance, and consideration. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS §§ 2.1, 4.1 (4th ed. 1998).

We agree with the district court's conclusion that there is sufficient evidence that Tasch has established the basic elements of an oral contract with Diamond. Tasch offered the testimony of several witnesses who stated that representatives of Diamond verbally told them to do additional work and that Tasch "would be taken care of" at the end of the job. This evidence is sufficient to show that Diamond made Tasch an offer, which Tasch accepted by performing such additional work. The consideration for this oral contract is that Tasch agreed to do additional work in exchange for the promise of additional compensation. There was evidence at trial showing that there was a meeting of the minds between Diamond and Tasch--Diamond wanted the delays handled and asked for additional work to be done by Tasch, and Tasch handled the delays and did additional work.

6

Austin Elcon lends little support to Diamond. In Austin Elcon, the issue presented was whether a requirement in a purchase order that modifications be in writing was enforceable under Texas law and, if so, whether Avco waived the requirement or was estopped from enforcing it. 590 F. Supp. at 513. The court held that there was insufficient evidence to conclude that Avco waived the requirement that modifications to the contract be executed in writing or to conclude that Avco's conduct estopped it from enforcing that requirement. Austin Elcon's main evidence was testimony that Avco "would take care of it down the line." Id. It is important to note that in Austin Elcon, the court found that there were "few conversations about the alleged extra work," and that Austin Elcon did "not maintain that the assurance was later repeated." Id. In the instant matter, there was significant testimony about Diamond's assurances to Tasch. Moreover, this issue is tied up with issues of witness credibility. The bankruptcy judge was in the best position to determine the witness' credibility and we will not disturb these findings unless clearly erroneous. We find nothing erroneous in the district court's conclusion that an oral contract existed between Diamond and Tasch.

## II. Principal-Agent Relationship

Diamond argues that the district court erroneously concluded that a principal-agent relationship existed between Diamond and Sabine.

A party may be held responsible for the acts of its purported agent under three agency theories. Wells Fargo Bus. Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983). The first requires that the principal have endowed its agent with actual authority, express or implied, to carry out its wishes. Id. To create an agency relationship based on actual authority, such authority must have been delegated to the agent either by words that expressly or directly authorize him to do a delegable act, or such authority may be implied from the facts and circumstances attending the

7

transaction in question. Implied authority may arise either independent of any express grant of authority, as from some manifestation by the principal that the particular authority in question shall exist in the agent, or it may arise as a necessary or reasonable implication required to effectuate some other authority expressly conferred by the principal. Id. at 944-45.

The second method by which a third party can become bound by the acts of its agent is based on apparent authority. Apparent authority arises when the principal, either intentionally or by lack of ordinary care, induces t hird persons to believe an individual is his agent even though no actual authority, express or implied, has been granted to such individual. Id. at 945.

The third theory under which a principal may be bound by the acts of its purported agent is one based on estoppel. A party basing its claim upon the rules of estoppel must show not only reliance, which is required when the claim is based on apparent authority, but also a change of position such that it would be unjust for the speaker to deny the truth of his words. Id. at 946.

We agree with the district court's conclusion that there was evidence presented at trial that establishes a principal-agent relationship existed between Diamond and Sabine. Jack Allen ("Allen"), a Tasch supervisor, testified that Tasch was interested in pursuing Diamond as a customer from 1993 to 1996. Allen testified that when Tasch had the opportunity to inspect the *Ocean Century* prior to signing any agreement, he met with Robert Garcin ("Garcin"), Diamond's operation manager on the *Ocean Century* project. Allen further testified that he met with both Garcin and Ken Osborne of Sabine, prior to executing the March 5th contract. Garcin admitted that he met with Allen prior to Tasch's submission of a bid for the underside work. Garcin also testified that during this meeting he asked Tasch what type of work they had done in the past and if they had done any blasting or painting. At Diamond's direction, the March 5th and May 5th contracts were between Tasch and

8

Sabine. Garcin testified that the contracts were structured this way because Tasch was not on Diamond's approved vendor list and did not have a master service agreement. Most importantly, Garcin admitted at trial that a contract was written between Diamond and Sabine directing Sabine to contract the underside work to Tasch. Garcin further testified that this was done because his technical people (Diamond employees) liked what Tasch had offered. This testimony establishes that Diamond used Sabine as its agent in contracting with Tasch, and that Sabine had been granted authority to act on behalf of Diamond in contracting with Tasch. This testimony also shows that Tasch wanted to do business with Diamond and that Diamond wanted Tasch to do work on the *Ocean Century*. The testimony, by Garcin's own admission, shows that Sabine was used as a conduit of convenience, or agent, for this purpose. Although the district court did not elaborate upon which theory it relied on in determining that an agency relationship existed, the testimony at trial supports the view that there was apparent authority to act as an agent. As such, the district court did not err in concluding that a principal-agent relationship existed between Diamond and Sabine.

### III.    Estoppel

The district court concluded that an alternative ground for liability existed against Diamond. It found that if there was no oral contract between the parties, Diamond would still be liable to Tasch under the theory of estoppel. Because we have already concluded that the court correctly found that an oral contract existed, we do not reach this issue.

### IV.    Diamond's Interference with Tasch's Performance

Diamond asserts that there is insufficient evidence to support the finding that it interfered with Tasch's performance of the contract. The bankruptcy judge found that Diamond employees, agents, and subcontractors directly controlled, altered, and interfered with Tasch's work. He concluded that

9

welding work on the heliport continuously interfered with Tasch's work on the topside.  He also found that Diamond directly interrupted Tasch's method of performance, causing a loss to Tasch. Moreover, the court found that as a result of the interruptions, Tasch's performance was seriously delayed, work had to be redone, and the welders tore leaks in the shrink-wrap, which necessitated repairs to the containment process. In addition, Allen testified that the delay to Tasch was discussed and complained about on a regular basis.  He said he discussed it with the welders on the rig, with the Diamond employees, and several times with Garcin.  He also testified that Tasch was continually told that delays would only last a few more days.

The bankruptcy judge found Tasch's description of events to be more credible than the defendants' description.  As noted previously, the bankruptcy court's findings as to witness credibility are entitled to considerable deference due to its position as factfinder.  See, e.g., Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 375 (5th Cir. 2000).   The bankruptcy judge heard all of the testimony in this action and was in the best position to make determinations of witness credibility. Further, after reviewing the record, we conclude that a finding of interference by Diamond is supported by, and consistent with, the evidence.

V.    Pretrial Disclosure

Diamond argues that Tasch did not comply with the district court's order, which required Tasch to provide Sabine and Diamond with a report of its testifying experts' opinions no later than ninety days prior to the final pretrial conference.  Diamond asserts that Allen testified about monetary damages sustained by Tasch, but the exhibits used by Allen were never included in the Amended Pretrial Order and were not provided to Diamond.  Tasch counters that it timely provided Diamond

10

with its expert's report. It also maintains that the exhibits used by Allen were a summary of other documents produced. Tasch also argues that Allen was not an expert, but a victim.

The court, in overruling Diamond's objection to the exhibits, found that the exhibits reflected testimony and/or exhibits already in the record. We agree. Moreover, Diamond's contention that Allen's testimony constituted expert testimony is meritless.

## VI.    Damages

Diamond asserts that there was insufficient evidence of damages and that Tasch is not entitled to *quantum meruit* damages. We disagree. Diamond's arguments regarding the insufficiency of the evidence are largely a rehashing of its other contentions, including its argument that there was no oral contract. Moreover, "[o]nce a subcontractor has established a breach of contract by the prime, he can recover the value of the work he has done or the service he has rendered. In other words, he is entitled to a *quantum meruit*." Citizens Nat'l Bank of Orlando v. Vitt, 367 F.2d 541, 546 (5th Cir. 1966) (emphasis added) (citation omitted). As such, we find no error.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's entry of judgment in favor of Tasch.

AFFIRMED.

11